# 22-641

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JANIE MARCAUREL, *individually and on behalf of all others similarly situated*, SHELBY INGRAM, *individually and on behalf of all others similarly situated*, NOLAN BRODIE, *individually and on behalf of all others similarly situated*, MARK KRENZER, GABRIEL FIERRO, GERALD DAVIS, MARY J. FUSILIER, CLIFFORD HARRIS; MIGUEL MONTELONGO, STEVEN DUDLEY,

*Plaintiffs-Appellants,*

ANDREW KANTACK,

*Plaintiff,*

v.

USA WASTE-MANAGEMENT RESOURCES, LLC,

*Defendant-Appellee,*

WASTE MANAGEMENT, INC.,

*Defendant.*

On Appeal from the U.S. District Court
for the Southern District of New York

## BRIEF OF DEFENDANT-APPELLEE
## USA WASTE-MANAGEMENT RESOURCES, LLC

Elizabeth Scott
Michelle A. Reed
AKIN GUMP STRAUSS HAUER &
  FELD LLP
2300 North Field Street
Suite 1800
Dallas, TX 75201
(214) 969-2800

James E. Tysse
Kristen E. Loveland
AKIN GUMP STRAUSS HAUER &
  FELD LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000
jtysse@akingump.com

*Counsel for Defendant-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee USA Waste-Management Resources, LLC, by and through its undersigned counsel, respectfully represents that it is wholly owned by Waste Management, Inc., its parent corporation, which is a publicly held corporation. No other publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW ..................................................... 1

INTRODUCTION................................................................................ 2

STATEMENT OF THE CASE ............................................................. 4

    A.    Factual Background ................................................................ 4

    B.    Procedural Background......................................................... 6

SUMMARY OF ARGUMENT ............................................................. 10

STANDARD OF REVIEW.................................................................. 12

ARGUMENT ...................................................................................... 13

I.    THE DISTRICT COURT WAS NOT OBLIGATED TO
    GRANT LEAVE TO AMEND *SUA SPONTE*............................. 13

    A.    Plaintiffs' Contention That The District Court Should
        Have Granted Relief They Never Requested Is
        Frivolous.............................................................................. 13

    B.    None Of Plaintiffs' Arguments Or Authorities Excuses
        Their Failure To Seek Amendment ..................................... 16

II.    PLAINTIFFS ALLEGE NO FACTS SHOWING THAT
    WASTE MANAGEMENT FAILED TO IMPLEMENT
    REASONABLE DATA SECURITY MEASURES.......................... 20

    A.    Plaintiffs' Boilerplate Pleading Dresses Legal
        Conclusions Up As Factual Allegations............................... 20

        1.    Plaintiffs' complaint must do more than
            allege conclusory allegation after conclusory
            allegation.......................................................... 21

        2.    To plausibly claim Waste Management's
            security measures were unreasonable,
            Plaintiffs must specify what steps Waste
            Management failed to take. ................................ 26

    B.    Plaintiffs Cannot Point To Any Specific Factual
        Allegations Showing That Waste Management's
        Security Measures Were Unreasonable Or Inadequate ...... 29

III.   PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL
       REASONS ......................................................... 34

       A.   Plaintiffs Failed To Plead An Unjust Enrichment
            Claim ..................................................... 35

       B.   Plaintiffs Failed To Plead An Implied Contract Claim........ 37

       C.   Plaintiffs Failed To Plead A Negligence Claim ............. 40

       D.   California Plaintiffs Failed To Plead A California UCL
            Claim ..................................................... 42

       E.   California Plaintiffs Failed to Plead A CCPA Claim .......... 44

CONCLUSION ......................................................... 50

# TABLE OF AUTHORITIES

CASES:

*Abdu-Brisson v. Delta Air Lines, Inc.,*
  239 F.3d 456 (2d Cir. 2001) .............................................................. 34

*Alki Partners, L.P. v. Windhorst,*
  472 F. App'x 7 (2d Cir. 2012) ........................................................... 26

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................... 12, 13, 21, 22

*Attestor Value Master Fund v. Republic of Arg.,*
  940 F.3d 825 (2d Cir. 2019) .............................................................. 18

*Baron v. Port Auth. of N.Y. & N.J.,*
  271 F.3d 81 (2d Cir. 2001) ................................................................ 39

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................... 31

*Benson v. Southern Cal. Auto Sales, Inc.,*
  192 Cal. Rptr. 3d 67 (Cal. Ct. App. 2015) ........................................ 45

*Brown v. De La Cruz,*
  156 S.W.3d 560 (Tex. 2004) .............................................................. 41

*Burgis v. New York City Dep't of Sanitation,*
  798 F.3d 63 (2d Cir. 2015) ................................................................ 12

*Carlsen v. GameStop, Inc.,*
  833 F.3d 903 (8th Cir. 2016) ............................................................. 36

*Clark v. American Honda Motor Co.,*
  No. 20-cv-3147, 2021 WL 1186338-AB (C.D. Cal. Mar. 25,
  2021) .................................................................................................. 44

*Cody v. Harris,*
  409 F.3d 853 (7th Cir. 2005) ............................................................. 26

*Cooney v. Chicago Pub. Sch.*,
943 N.E.2d 23 (Ill. App. Ct. 2010) ................................................ 41, 42

*Corsello v. Verizon N.Y., Inc.*,
967 N.E.2d 1177 (N.Y. 2012) ................................................................ 35

*Cresci v. Mohawk Valley Cmty. Coll.*,
693 F. App'x 21 (2d Cir. 2017) ............................................................ 18

*Daury v. Smith*,
842 F.2d 9 (1st Cir. 1988) ..................................................................... 26

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal.
Nov. 3, 2016) ......................................................................................... 27

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
614 F. App'x 731 (5th Cir. 2015) ......................................................... 37

*Estle v. International Bus. Machs. Corp.*,
23 F.4th 210 (2d Cir. 2022) ........................................................... 20, 35

*Federal Treasury Enter. Sojuzplodoimport v. Spirits Int'l
N.V.*,
400 F. App'x 611 (2d Cir. 2010) ......................................................... 36

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011) ......................................................... 13, 32

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
41 F.4th 71 (2d Cir. 2022) ........................................... 12, 14, 15, 43

*Giordano v. Thomson*,
564 F.3d 163 (2d Cir. 2009) ................................................................ 36

*Hoffmann-La Roche Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004) ................................................................ 42

*Horoshko v. Citibank, N.A.*,
373 F.3d 248 (2d Cir. 2004) ......................................................... 13, 19

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.,*
  No. CV 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ........................................................................ 38

*In re Ambry Genetics Data Breach Litig.,*
  567 F. Supp. 3d 1130 (C.D. Cal. 2021) ......................... 43

*In re Lehman Bros. Mortg.-Backed Sec. Litig.,*
  650 F.3d 167 (2d Cir. 2011) ........................................ 20

*In re Tamoxifen Citrate Antitrust Litig.,*
  466 F.3d 187 (2d Cir. 2006) ........................................ 20

*Kagan v. Gibraltar Sav. & Loan Ass'n*
  676 P.2d 1060 (Cal. 1984) ........................................... 45

*Kaplan v. Lebanese Canadian Bank, SAL,*
  999 F.3d 842 (2d Cir. 2021) ........................................ 39

*Karter v. Epiq Sys., Inc.,*
  No. 20-cv-01385-CJC, 2021 WL 4353274 (C.D. Cal. July 16, 2021) ................................................................ 28

*Kopchik v. Town of E. Fishkill,*
  759 F. App'x 31 (2d Cir. 2018) .................................... 18

*Kuhns v. Scottrade, Inc.,*
  868 F.3d 711 (8th Cir. 2017) ............................ 22, 28, 29

*Leibowitz v. Cornell Univ.,*
  584 F.3d 487 (2d Cir. 2009) ........................................ 37

*Liu v. Intercept Pharms., Inc.,*
  No. 20-3488, 2022 WL 2165621 (2d Cir. June 16, 2022) ............... 19

*Longenecker-Wells v. Benecard Servs. Inc.,*
  658 F. App'x 659 (3d Cir. 2016) ............................... 37, 38

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
  797 F.3d 160 (2d Cir. 2015) ............................... 14, 17, 18

vi

*Maag v. U.S. Bank, Nat'l Ass'n*,
No. 21-cv-0031-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8,
2021) ........................................................................................ 22, 29

*Marchionda v. Embassy Suites Franchise, LLC*,
No. 4:15-cv-00479-JEG-SBJ, 2018 WL 8458871 (S.D. Iowa
Aug. 13, 2018) .................................................................................. 31

*McAllen Hosps., L.P. v. Lopez*,
576 S.W.3d 389 (Tex. 2019) ............................................................. 39

*Metz v. U.S. Life Ins. Co. in City of New York*,
662 F.3d 600 (2d Cir. 2011) ............................................................. 15

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
970 F.3d 133 (2d Cir. 2020) ............................................................. 15

*Meyer v. Sprint Spectrum L.P.*,
200 P.3d 295 (Cal. 2009) .................................................................. 45

*New Jersey Carpenters Health Fund v. Royal Bank of Scot.*
*Grp., PLC*,
709 F.3d 109 (2d Cir. 2013) ............................................................. 31

*Nunes v. Cable News Network, Inc.*,
31 F.4th 135 (2d Cir. 2022) .................................................... 2, 13, 16

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ................................................................... 36, 43

*Patton v. Experian Data Corp.*,
No. 17-cv-1559-JVS, 2018 WL 6190349 (C.D. Cal. Jan. 23,
2018) .................................................................................................. 41

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med.*
*Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ............................................................. 21

*Porat v. Lincoln Towers Cmty. Ass'n*,
464 F.3d 274 (2d Cir. 2006) ....................................................... 16, 19

vii

*Portier v. NEO Tech. Sols.*,
No. 3:17-cv-30111, 2019 WL 7946103 (D. Mass. Dec. 31,
2019) ................................................................... 27
No. 3:17-cv-30111, 2020 WL 877035 (D. Mass. Jan. 30,
2020) ................................................................... 27

*Purvis v. Aveanna Healthcare, LLC*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021) ................................. 38

*Razuki v. Caliber Home Loans, Inc.*,
No. 17-cv-1718-LAB-WVG, 2018 WL 6018361 (S.D. Cal.
Nov. 15, 2018) .............................................. 28, 32

*Rolon v. Henneman*,
517 F.3d 140 (2d Cir. 2008) ............................................ 13

*Sackin v. TransPerfect Glob., Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017) ........................... 28, 38

*Simmons v. USAble Corp.*,
No. 4:20-cv-00137-KGB, 2021 WL 4505549 (E.D. Ark.
Sept. 30, 2021) ...................................................... 49

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...................................... 43, 44

*Springmeyer v. Marriott Int'l, Inc.*,
No. 20-CV-867-PWG, 2021 WL 809894 (D. Md. Mar. 3,
2021) .............................................................. 24, 27

*Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*,
21 F. Supp. 2d 664 (E.D. Tex. 1998) .................................. 36
199 F.3d 788 (5th Cir. 2000) ........................................... 36

*Thymes v. Gillman Companies*,
No. H-17-cv-2834, 2018 WL 1281852 (S.D. Tex. Mar. 9,
2018) ................................................................... 38

*Toretto v. Donnelley Fin. Sols., Inc.*,
No. 1:20-cv-2667-GHW, 2022 WL 348412 (S.D.N.Y. Feb. 4,
2022) ................................................................... 27

*United King Film Distrib. Ltd. v. Does 1-10*,
No. 21-cv-11024-KPF-RWL, 2022 WL 2473430 (S.D.N.Y.
July 6, 2022) ................................................................. 31

*United States v. Bedi*,
15 F.4th 222 (2d Cir. 2021) .......................................... 47

*United States v. Restrepo*,
986 F.2d 1462 (2d Cir. 1993) ........................................ 35

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) .......................................... 33

*Village Green At Sayville, LLC v. Town of Islip*,
43 F.4th 287 (2d Cir. 2022) .......................................... 50

*Ward v. Argon Med. Devices, Inc.*,
No. 3:17-cv-640, 2018 U.S. Dist. LEXIS 46801 (N.D.N.Y.
Mar. 22, 2018) .............................................................. 29

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) ..................................... 14, 17

*Wilson v. Merrill Lynch & Co.*,
671 F.3d 120 (2d Cir. 2011) .......................................... 15

*Yamashita v. Scholastic Inc.*,
936 F.3d 98 (2d Cir. 2019) .............................................. 3

## STATUTES:

17 U.S.C.
§ 1201(a)(3)(A) ............................................................ 31

CAL. BUS. & PROF. CODE §§ 17200 *et seq.* .......................... 7

CAL. CIV. CODE
§ 1782(b) ........................................................................ 45
§ 1798.81.5(b) ................................................................ 24
§ 1798.150 ....................................................................... 6
§ 1798.150(a)(1) ................................................ 9, 47, 48
§ 1798.150(b) ......................................................... *passim*

TEX. BUS. & COM. CODE ANN.
§ 521.052(a) .................................................................. 41
§ 521.151(a) .................................................................. 41

OTHER AUTHORITIES:

CAL. S. JUDICIARY COMM., ANALYSIS OF AB 375, 2017-2018
Sess. (June 26, 2018) ................................................ 48

CAL. S. JUDICIARY COMM., ANALYSIS OF SB 1121, 2017-2018
Sess. (Apr. 24, 2018) ................................................ 48

CISA, REMEDIATE VULNERABILITIES FOR INTERNET-
ACCESSIBLE SYSTEMS ................................................ 49

FED. R. CIV. P.
12(b)(6) ..................................................................... 7, 12
15 ................................................................................. 17
15(a)(1)(B) ................................................................. 7, 14
15(a)(2) ........................................................................ 16
59 ........................................................................ 9, 14, 17
59(e) ............................................................................. 15
60 ............................................................................. 9, 14

WASTE MANAGEMENT, CODE OF CONDUCT (May 2022) ............................ 39

## ISSUES PRESENTED FOR REVIEW

1.   Whether the District Court abused its discretion in failing to grant Plaintiffs leave to amend *sua sponte,* where Plaintiffs never requested leave to amend their Amended Consolidated Complaint either before or after its dismissal.

2.   Whether Plaintiffs plausibly pleaded factual, non-conclusory allegations that Waste Management failed to implement reasonable security measures.

3.   Whether Plaintiffs otherwise plausibly pleaded unjust enrichment, implied contract, negligence, California Consumer Privacy Act ("CCPA"), and California Unfair Competition Law ("UCL") claims.

## INTRODUCTION

This appeal is about whether plaintiffs who bring negligence and similar claims in a data breach litigation may satisfy their pleading burden with conclusory, boilerplate allegations that the defendant's data protection measures were not "reasonable." The answer is no: nothing about data breach litigation makes defendants (who are themselves hacking victims) strictly liable, or relaxes the ordinary rules of pleading. The district court recognized Plaintiffs' gambit for what it was—an improper attempt to hold Defendant USA Waste-Management Resources, LLC ("Waste Management") liable based on the bare fact of a data breach—and rightly dismissed their Amended Consolidated Class Action Complaint.

In light of their deficient pleading, it is no surprise that Plaintiffs' lead argument is that the district court should have *sua sponte* offered them an opportunity to shore up their conclusory allegations with specific facts. But as this Court has held on several occasions, such an argument is "frivolous": the district court could hardly have "abused its discretion in not permitting an amendment that was never requested." *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 147 n.7 (2d Cir. 2022) (internal

quotation marks omitted). In reality, Plaintiffs never gave the district court an opportunity to exercise its discretion because they never sought leave to amend, either before or after their complaint was dismissed.

After accusing the district court of failing to grant relief they never requested, Plaintiffs next blame the district court for ignoring allegations they never made. Although Waste Management's liability turns on whether its security measures were reasonable, Plaintiffs alleged no well-pleaded facts that the measures fail that standard. Instead, Plaintiffs argue *res ipsa loquitur*: because Waste Management was hacked, its measures must be unreasonable. But while Plaintiffs repeat the mantra that Waste Management's measures were not "reasonable" or "adequate" throughout their complaint, such conclusions are no substitute for factual allegations. Nor, in any event, could Plaintiffs' unjust enrichment, implied contract, negligence, or California law claims survive, given additional, independent defects with each of those claims.

In short, Plaintiffs cannot use "a complaint that alleges nothing but suspicions" to embark on "a fishing expedition, trawling" for actual wrongdoing through discovery. *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 106-107 (2d Cir. 2019) (internal quotation marks omitted). Especially

because Plaintiffs never even attempted to seek amendment, the district court did not abuse its discretion (or otherwise err) in dismissing their complaint. The judgment of dismissal should be affirmed.

## STATEMENT OF THE CASE

### A.    Factual Background

Waste Management is North America's leading provider of comprehensive waste management environmental services. A39 ⁋ 28. It is also a leading recycler in the United States and Canada, and creates energy by recovering gas that is produced naturally as waste decomposes in its landfills. A39 ⁋ 30.

Between January 21 and 23, 2021, an unauthorized actor hacked into Waste Management's system. A33 ⁋ 11. In May 2021, Waste Management determined that the data breach involved personally identifiable information ("PII"), such as employees' names, Social Security numbers, dates of birth, or driver license numbers. A33 ⁋ 11. On May 28, Waste Management provided notice of the breach to current and former employees who may have been affected by it. A34 ⁋ 12. In subsequent letters, Waste Management explained that it had conducted "a time-intensive investigation of the incident and any possible damage," and tailored its remediation efforts to the persons potentially affected.

4

A121, A125. It established a call center "to address any questions or concerns" and "provide[] guidance on how *** individuals could best protect themselves against identity theft and fraud." A121-122, A125. Waste Management also offered the persons potentially affected "the opportunity to enroll in one year of credit monitoring at no cost." A122, A125. Moreover, it implemented "[a]dditional security safeguards," including by pushing out "an enterprise-level password reset for all users and active service accounts," expanding its "data loss prevention program *** to proactively find and secure data," and conducting "a comprehensive review of its firewalls." A121-A122, A125-A126.

The named Plaintiffs in this action—Janie Marcaurel, Gabriele Fierro, Shelby Ingram, Mark Krenzer, Mary J. Fusilier, Clifford Harris, Nolan Brodie, Miguel Montelongo, Gerald Davis, and Steven Dudley—are current or former Waste Management employees whose private information was allegedly compromised as a result of the breach. A35-A38, ¶¶ 17-26.

5

B.     Procedural Background

This case is a consolidation of four separate actions filed against Waste Management.  A130.[1]  At an October 22, 2021, case management conference, the district court discussed a schedule for filing an amended complaint that would consolidate allegations in the four actions by November 29, 2021.  The Court also invited Plaintiffs to respond to the motion to dismiss with a second amended complaint, "with the understanding that this will in all likelihood be the last opportunity to amend," A23, though it did not exclude the possibility of further amendment, *see* A19 (scheduling order).

On November 29, 2021, Plaintiffs filed their Amended Consolidated Class Action Complaint (the "Amended Consolidated Complaint" or "complaint"), asserting ten different causes of action related to the data breach, including five they continue to press on appeal:  negligence, breach of implied contract, unjust enrichment, and violations of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150,

---

[1] Plaintiffs originally named Waste Management, Inc. as a defendant, *see, e.g.*, Complaint, No. 1:21-cv-06199 (S.D.N.Y. July 20, 2021), ECF No. 1, but the court subsequently granted the parties' joint request to terminate that party, Memo Endorsement, No. 1:21-cv-06199 (S.D.N.Y. Jan. 6, 2022), ECF No. 50.

and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* A81-A104. Plaintiffs moved to dismiss on January 8, 2022. Rather than respond by filing a second amended complaint (in accordance with the briefing schedule and Rule 15(a)(1)(B)), Plaintiffs elected to oppose the motion to dismiss on January 29. In that brief, Plaintiffs did not request (either directly or in the alternative) an opportunity to amend.

On February 24, the district court granted Waste Management's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). A153. As relevant to the five claims at issue on appeal, the court held that Plaintiffs' boilerplate, conclusory allegations failed to plausibly allege a critical factual predicate: that Waste Management had not implemented reasonable security measures to protect Plaintiffs' data. A142 (negligence); A144 (implied contract); A146 (unjust enrichment); A148 (CCPA); A152 (UCL). Although Plaintiffs argued in *briefing* that Waste Management "fail[ed] to store its employees' PII in an encrypted format," "fail[ed] to delete old and unnecessary data," and "fail[ed] to adhere to FTC data security guidelines," A141, none of these arguments found support in Plaintiffs' complaint, A141-A142. The district court

7

noted that, "[a]t most" the complaint suggested "that attackers may have been able to access the plaintiffs' PII in an unencrypted form." A142. But that allegation did "not plead that employees' PII was *stored* unencrypted on Waste Management's servers." *Id.* (emphasis added). Having failed to allege facts (as opposed to conclusions) indicating "that the breach was caused by Waste Management's unreasonable conduct," Plaintiffs "effectively"—and improperly—were seeking to hold Waste Management liable under a strict liability standard "for the fact of the data breach alone." *Id.*

The district court also cited independent reasons for dismissing Plaintiffs' unjust enrichment and CCPA claims. With respect to the former, the district court held that it was both duplicative of Plaintiffs' other claims and that Plaintiffs had failed to adequately allege that Waste Management benefitted at Plaintiffs' expense. A146. With respect to the CCPA claim, the district court held that Plaintiffs failed to adequately allege that Waste Management had not cured its alleged CCPA violation. A148-149. The CCPA did not require businesses "to place consumers in the same position they would have been absent a breach," as Plaintiffs argued; it required only that a business cure the

8

"violation" of its "duty to implement and maintain reasonable security procedures and practices." A148 (citing CAL. CIV. CODE § 1798.150(a)(1), (b)).

In light of its dismissal of the negligence, implied contract, unjust enrichment, UCL, and CCPA claims, the district court had no occasion to consider Waste Management's remaining arguments for why those claims should be dismissed.

Finally, the district court dismissed on other grounds Plaintiffs' four remaining claims, for breach of contract, breach of confidence, breach of fiduciary duty, and breach of California's Customer Records Act. On appeal, Plaintiffs do not address, or otherwise contest, the dismissal of those claims. *See* Br. 16 (discussing only the five claims discussed above).

After granting the motion to dismiss in full, the district court ordered the Clerk of Court to enter judgment and close the case, which it did that same day. Plaintiffs did not move for reconsideration, to alter or amend the judgment under Rule 59, or for relief from judgment under Rule 60. Instead, they noticed this appeal. A15.

## SUMMARY OF ARGUMENT

**I.** The district court did not err—and certainly did not abuse its discretion—in not granting Plaintiffs leave to amend the Amended Consolidated Complaint for the simple reason that Plaintiffs never requested such leave, either before or after dismissal. Plaintiffs do not cite a single case where this Court found that a district court abused its discretion by failing to *sua sponte* grant an amendment that was never requested. Instead, the proper course was for Plaintiffs to either seek to amend before judgment or seek leave from the district court to amend post-judgment—but Plaintiffs took neither course. Accordingly, their claim of error, as this Court has repeatedly held, is "frivolous."

**II.** Plaintiffs' five claims on appeal all share a fatal flaw: Plaintiffs do not make plausible, factual allegations that Waste Management failed to implement reasonable security measures to protect their PII. Plaintiffs' complaint is chockful of conclusory, boilerplate allegations. Although Plaintiffs allege dozens of times that Waste Management's measures were not "reasonable" or "adequate," they fail to allege any specific facts with respect to what security measures Waste Management did or did not take, or how those measures compared to industry

10

standards. At most, Plaintiffs point to allegations (without factual enhancement) that hackers were able to *access* PII in unencrypted form, not that PII was stored unencrypted. But because information can be decrypted, accepting Plaintiffs' bare allegations as sufficient would impose strict liability on any company that experiences a data breach, in contravention of the law, which imposes liability for data breaches only if a company's security measures were unreasonable.

III. Although the Court could stop there, Plaintiffs' claims are all flawed for additional reasons. First, the district court correctly dismissed Plaintiffs' unjust enrichment claim on the grounds that it is duplicative of Plaintiffs' other claims and that Plaintiffs failed to allege that Waste Management was enriched at Plaintiffs' expense. Second, Plaintiffs failed to plausibly allege that Waste Management ever intended to enter an implied contract to safeguard Plaintiffs' data. Plaintiffs cannot rely on Waste Management's personnel policies, which expressly disclaim contractual intent. Nor can the receipt of sensitive data, without more, establish a contractual promise on behalf of the recipient. Third, Texas law, which applies to Plaintiffs' claims, would not recognize a common-law duty enforceable by private citizens to protect PII—particularly

because Texas already creates a statutory duty requiring businesses to protect PII that is enforceable by the Attorney General alone. Fourth, Plaintiffs' California UCL claim fails because the complaint does not allege that Plaintiffs lack an adequate legal remedy for any harm caused by the data breach. Finally, their CCPA claim fails because, as the district court held, Plaintiffs failed to adequately allege that Waste Management did not cure any alleged violation within 30 days.

## STANDARD OF REVIEW

This Court "typically review[s] a district court's denial of leave to amend for abuse of discretion." *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 82 (2d Cir. 2022). But "a district court cannot be said to err by not permitting an amendment that was never requested." *Id.* (internal quotation marks omitted).

This Court "review[s] *de novo* a grant of a motion to dismiss under Rule 12(b)(6)." *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015). In so doing, it accepts only "well-pleaded allegations" as true and requires the complaint to "contain sufficient factual matter *** to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (internal quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Courts are not required "to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted).

## ARGUMENT

## I. THE DISTRICT COURT WAS NOT OBLIGATED TO GRANT LEAVE TO AMEND *SUA SPONTE*

### A. Plaintiffs' Contention That The District Court Should Have Granted Relief They Never Requested Is Frivolous

Plaintiffs' primary argument is that the district court abused its discretion in dismissing their claims without first granting leave to amend. But Plaintiffs neglect to mention that they *never requested such relief. See* Br. 10-12. As such, their "contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous." *Nunes*, 31 F.4th at 147 n.7 (quoting *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-250 (2d Cir. 2004)). Because "no court can be said to have erred in failing to grant a request that was not made," *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011), there can be no error—let alone an abuse of discretion—in the district court's failure to

13

grant leave to replead *sua sponte*. *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011); *see Gamma Traders,* 41 F.4th at 82.

Ignoring this precedent, Plaintiffs contend that the district court "refus[ed] to allow [them] leave" (Br. 13) to file a second amended complaint.[2] But the court did nothing of the sort. Plaintiffs could have amended as a matter of right in lieu of opposing Waste Management's motion to dismiss. *See* FED. R. CIV. P. 15(a)(1)(B); A19 (scheduling order). They could have sought leave to amend prior to dismissal, including in the alternative in their opposition to Waste Management's motion to dismiss. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190-191 (2d Cir. 2015) ("Generally, we will not deem a request for leave to amend insufficient on the basis of form alone."). Or, they could have sought leave to amend in a post-judgment motion under Rule 59 or Rule 60—which this court has recognized to be the proper procedure for "[a] party seeking to file an amended complaint postjudgment." *Williams*, 659 F.3d at 213 (alteration in original); *see id.*

---

[2] Plaintiffs protest that, "[d]espite its name," the "Amended Consolidated Class Action Complaint" was not truly an "amended" complaint, because it was the first complaint filed in the consolidated action. Br. 5 n.3. But it was plainly an *amended* version of the four lengthy complaints comprising it.

(noting that district courts should entertain requests to replead submitted "after the entry of judgment"); *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 144 (2d Cir. 2020) ("[I]t is an abuse of discretion to deny a motion [for leave to amend] under Rule 59(e) *** when the plaintiff was never given an opportunity to replead in the first place.").

But Plaintiffs did none of those things. When, as here, "a plaintiff fails to seek leave from the district court to amend its complaint, *either before or after its complaint is dismissed*, it forfeits the right to seek leave to amend on appeal." *Gamma Traders*, 41 F.4th at 82 (alterations omitted) (emphasis added).

There are good reasons for forfeiture in that circumstance. This Court reviews denials of leave to amend for abuse of discretion—but absent a request, there is no exercise of discretion for this Court to review. For example, the district court was never called upon to decide whether Plaintiffs could "advance new factual allegations *** sufficient to make out a claim," or whether amendment would be futile. *Metz v. U.S. Life Ins. Co. in City of New York*, 662 F.3d 600, 603 (2d Cir. 2011); *see, e.g.*, *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 140 (2d Cir. 2011)

("no reason to grant appellant relief" where plaintiff "neither provided *** any detail about [its] proposed new allegations nor explained how they could cure the deficiencies that led to the dismissal of his complaint" (alteration omitted)); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275-276 (2d Cir. 2006) (no abuse of discretion in denying leave to amend where "plaintiff's counsel did not advise the district court how the complaint's defects would be cured"). Nor did the district court otherwise have the opportunity to decide whether "justice *** require[d]" amendment here. FED. R. CIV. P. 15(a)(2).

In short, because the district court was not called upon to exercise its discretion, it could not have abused that discretion as a matter of law. Plaintiffs' contrary argument is "frivolous." *Nunes*, 31 F.4th at 147 n.7.

## B. None Of Plaintiffs' Arguments Or Authorities Excuses Their Failure To Seek Amendment

Plaintiffs make three arguments for why the district court nevertheless abused its discretion. None is persuasive.

*First*, Plaintiffs emphasize that leave to amend should freely be given under Federal Rule of Civil Procedure 15(a)(2). Br. 10-11. That is true, as far as it goes. But the cases from which Plaintiffs cherry-pick their quotations regarding amendment unsurprisingly involve, unlike

here, situations where district courts *actually exercised* their discretion. Plaintiffs fail to cite a single case in which a district court was found to have abused its discretion by failing to *sua sponte* grant leave that was never requested.

For example, in *Williams*, the plaintiff requested leave to amend in a postjudgment motion for reconsideration. 659 F.3d at 210. This Court first reiterated its precedent that a district court did not abuse its discretion in "fail[ing] to grant leave to replead *sua sponte.*" *Id.* at 212. But it also noted that the district court could not deny a postjudgment request for amendment solely because it was made postjudgment. *Id.* at 214. Instead, seeking to vacate under Rules 59 or 60 was the proper method for obtaining amendment in that circumstance, and the district court was to evaluate such a motion "with due regard to both the value of finality and the [liberal] policies embodied in Rule 15." *Id.* at 213.

Similarly, in *Loreley*, plaintiffs requested leave to amend "'in the alternative' at the end of [their] brief opposing the motion to dismiss," and this Court reversed the judgment of dismissal on the ground that the "form [of the request] alone" was an insufficient basis on which to deny leave to amend. 797 F.3d at 190. But this Court explicitly recognized

17

that "[d]enial of leave might be proper where a plaintiff's request [to amend] was inconspicuous and never brought to the court's attention." *Id.* And in *Attestor Value Master Fund v. Republic of Argentina*, this Court affirmed the district court's decision *denying* plaintiff's request for amendment on the ground that plaintiffs had not offered any "specific changes they could make to their Amended Complaint to cure its deficiencies." 940 F.3d 825, 833 (2d Cir. 2019); *see* Mem. of Law in Opp'n to the Republic of Arg.'s Mot. to Dismiss at 24-25, *Attestor Value Master Fund v. Republic of Arg.*, No. 16-cv-2238 (S.D.N.Y. Apr. 9, 2016), ECF No. 46 (seeking leave to amend).[3]

*Second*, Plaintiffs contend that the district court should have granted them leave to amend *sua sponte* because the district court's ruling was the first of its kind on the merits of their complaint. Br. 2.

---

[3] Plaintiffs' unpublished decisions are similarly unhelpful. *Cresci v. Mohawk Valley Community College* involved a plaintiff who, "in his papers opposing the motion to dismiss, had expressly asked to be allowed to replead in the event of an adverse ruling." 693 F. App'x 21, 25 (2d Cir. 2017); *see* Pl.'s Mem. in Resp. to Mot to Dismiss at 9, *Cresci v. Mohawk Valley Cmty. Coll.*, No. 6:14-cv-1172 (S.D.N.Y. Nov. 17, 2014), ECF No. 7. In *Kopchik v. Town of East Fishkill*, although this Court admonished the district court not to deny a plaintiff the opportunity to replead prematurely, this Court vacated on the ground that plaintiff's claims were adequately pleaded, 759 F. App'x 31, 38 (2d Cir. 2018), and plaintiff did not amend on remand.

But again, "the District Court was under no obligation to provide the [Plaintiffs] with leave to amend their complaint, much less provide such leave *sua sponte*." *Horoshko*, 373 F.3d at 249-250. Indeed, this Court often affirms denials of leave to amend upon a district court's first consideration of a complaint's merits, even where a plaintiff *has* requested leave. *See, e.g.*, *Liu v. Intercept Pharms., Inc.*, No. 20-3488, 2022 WL 2165621, at *4 (2d Cir. June 16, 2022) (even though plaintiffs previously "never had the benefit of a ruling" on the merits of their complaint, district court did not abuse its discretion in denying leave to amend where "[p]laintiffs' request was at best cursory"); *Porat*, 464 F.3d at 276 (where district court ruled for the first time on merits of complaint, no abuse of discretion in denying leave to amend where plaintiff never indicated how he would cure complaint's deficiencies).

*Finally*, Plaintiffs argue that the district court abused its discretion because it did not provide a "'justifying reason' for refusing to allow leave to amend after granting the motion to dismiss." Br. 13. But again, the district court did not "refus[e]" anything—it simply did not grant leave *sua sponte*. Even when leave is requested "informally in a brief filed in opposition to a motion to dismiss," a district court has "discretion to deny

19

leave to amend implicitly by not addressing [the] request[]." *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011) (quoting *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006)). Needless to say, a district court need not—and could not— address a request that was never made.

## II. PLAINTIFFS ALLEGE NO FACTS SHOWING THAT WASTE MANAGEMENT FAILED TO IMPLEMENT REASONABLE DATA SECURITY MEASURES

### A. Plaintiffs' Boilerplate Pleading Dresses Legal Conclusions Up As Factual Allegations

Plaintiffs appeal the dismissal of five claims—negligence, breach of implied contract, unjust enrichment, and violations of the CCPA and UCL.[4] But as Plaintiffs implicitly recognize in seeking to belatedly amend, all these claims share the same fatal flaw. Although each requires Plaintiffs to plausibly allege that Waste Management failed to implement "reasonable" security measures to protect their PII,[5]

---

[4] Plaintiffs do not address—and thus have abandoned—their remaining causes of action. *See Estle v. International Bus. Machs. Corp.*, 23 F.4th 210, 215 n.3 (2d Cir. 2022) ("Arguments not made in an appellant's opening brief are waived even if the appellant raised them in a reply brief." (alterations and ellipses omitted)).

[5] *See* A81-A82 ⁋⁋ 230, 235 (alleging Waste Management breached a duty "to provide security, consistent with industry standards, to ensure

20

Plaintiffs' allegations boil down to the proposition that, "[b]y *** allowing an unauthorized actor to access its computer network environment, [Waste Management] failed to employ reasonable and appropriate measures." A51-52 ⁋ 71. As the district court recognized, because none of Plaintiffs' claims impose strict liability, Plaintiffs' conclusory allegations are insufficient as a matter of law.

> 1. *Plaintiffs' complaint must do more than allege conclusory allegation after conclusory allegation.*

To plausibly allege that Waste Management's security measures were unreasonable, Plaintiffs must allege "well-pleaded facts" that "permit the court to infer more than the mere *possibility* of misconduct." *Iqbal*, 556 U.S. at 679 (emphasis added). Allegations that "are conclusory" are "not entitled to be assumed true," *id.* at 681, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* at 678. That standard, moreover, "requires assessing the allegations of the complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs.*

---

their protocols, systems, and networks adequately protected the PII of its current and former employees"); A87 ⁋⁋ 257, 260 (similar); A93 ⁋ 286 (similar); A96 ⁋ 301 (similar); A98 ⁋ 311 (similar).

*Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718-719 (2d Cir. 2013) (internal quotation marks omitted).

In order to state a negligence claim or similar cause of action, a plaintiff must accordingly do more than merely state the conclusion that a defendant's security measures were unreasonable. *See, e.g.*, *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-718 (8th Cir. 2017) (The "premise that because data was hacked [a defendant's] protections must have been inadequate is a 'naked assertion[ ] devoid of further factual enhancement' that cannot survive a motion to dismiss." (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678)); *Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-cv-0031-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim where plaintiff made "only *** unsupported allegations that his PII was compromised because Defendant did not 'implement and maintain reasonable security procedures and practices,' 'failed to effectively monitor its systems for security vulnerabilities,' and had 'lax security'" (internal citations omitted)).

Under that standard, Plaintiffs' amended complaint falls short. As the district court found, though Plaintiffs' complaint "contains many conclusory allegations that Waste Management failed to take reasonable

measures to protect its data," the complaint "pleads no facts regarding any specific measures that Waste Management did or didn't take," and contains no "allegations regarding the manner in which their systems were breached." A141. Absent any factual allegations, the complaint "effectively seeks to hold Waste Management liable for the fact of the data breach alone." A142.

Plaintiffs themselves highlight (at 20) paragraph after paragraph in which their complaint does little more than vary the bare claim that Waste Management failed to implement "reasonable," "adequate," or "appropriate" security measures, claiming these suffice:

- A33 ¶ 10: Waste Management "*failed to meet its obligations to properly secure and protect* the sensitive PII entrusted to it by its current and former employees." (emphasis added).

- A51-A52 ¶¶ 70-71: Waste Management "*failed to take adequate cyber security measures* to prevent the Data Breach from occurring," and "failed to employ *reasonable and appropriate measures* to protect against unauthorized access to confidential employee data." (emphases added).

- A82-A83 ¶ 240: Waste Management "*failed to meet the data security standards* set forth under Section 5 of the FTC Act, which prohibits 'unfair *** practices in or affecting commerce.' This prohibition includes *failing to have adequate data security measures, which [Waste Management] failed to do* as discussed herein." (emphases added).

23

- A93 ¶ 286: Waste Management "*failed to take reasonable steps to pay for the level of security required and/or industry standard security to prevent the Data Breach.*" (emphasis added).

- A97 ¶ 304: Waste Management "*failed to implement and maintain reasonable security procedures and practices* appropriate to the nature of the information to protect California Plaintiffs' and California Class members' PII." (emphasis added).

- A99 ¶¶ 314-315: Waste Management "violated Section 5(a) of the FTC Act *by failing to implement reasonable and appropriate security measures* or follow industry standards for data security, and by failing to timely notify California Plaintiffs and California Class members of the Data Breach," and "also violated California Civil Code § 1798.81.5(b) in that it *failed to maintain reasonable security procedures and practices*." (emphases added).

Needless to say, "mere repetition of conclusory and nonspecific allegations of [Waste Management's] alleged shortcomings does not overcome the need to plead sufficient facts relating to what it did or did not do that led to the injuries claimed by the Plaintiffs." *Springmeyer v. Marriott Int'l, Inc.*, No. 20-CV-867-PWG, 2021 WL 809894, at *3 (D. Md. Mar. 3, 2021).

Indeed, these allegations simply mimic boilerplate allegations found in numerous other complaints filed around the country near the same time as Plaintiffs filed their complaints. *See, e.g.*, Class Action Compl. at 14 ¶ 43, *Legg v. Leaders Life Ins. Co.*, No. 5:21-cv-655 (W.D.

24

Okl. June 25, 2021), ECF No. 1 (alleging "Leaders Life failed to employ reasonable and appropriate measures to protect against unauthorized access to confidential customer data"); First Am. Class Action Compl. at 11 ¶ 47, *Reed v. Amerifirst Fin. Inc.*, No. 2:21-cv-728 (D. Ariz. July 15, 2021), ECF No. 11 (alleging "AmeriFirst failed to employ reasonable and appropriate measures to protect against unauthorized access to confidential customer data"); Class Action Compl. at 17 ¶ 48, *Savick v. T-Mobile USA, Inc.*, No. 3:21-cv-16005 (D.N.J. Aug. 25, 2021), ECF No. 1 (identical allegation against T-Mobile); Consolidated Class Action Compl. at 2 ¶ 5, *James v. Davaco*, No. 3:21-cv-2318 (N.D. Tex. Jan. 10, 2022), ECF No. 23 (similar).

To be sure, Plaintiffs argue in *briefing*—both here and below—that Waste Management "failed to *** encrypt files containing employees' full names, Social Security numbers, dates of birth, and driver's license numbers," "properly dispose of personal information that is no longer needed," "require complex passwords to be used on networks," and "monitor for suspicious activity on the network." Br. 22-23. But none of these specific allegations actually appears in their complaint; and Plaintiffs do not claim that they could actually plead such allegations if

given the opportunity. *See* Br. 12. Plaintiffs "cannot amend the[ir] complaint through an appellate brief," by falsely claiming their complaint makes allegations it does not. *Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7, 9 (2d Cir. 2012) (citing *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005), and *Daury v. Smith*, 842 F.2d 9, 15 (1st Cir. 1988)).

>  2.  *To plausibly claim Waste Management's security measures were unreasonable, Plaintiffs must specify what steps Waste Management failed to take.*

As the district court recognized, Plaintiffs' complaint pleads no specific facts about the nature of the breach or Waste Management's practices: it "does not allege that employees' PII was not stored in an encrypted format, does not allege that Waste Management failed to delete old data, and does not point to any other failure to adhere to FTC data security guidelines." A141-A142. In so holding, the district court did not apply an improper "particularity" standard, *contra* Br. 16, but rather simply required Plaintiffs to raise their claims above the level of mere possibility by alleging *facts*, not conclusions.

Plaintiffs' conclusory allegations stand in stark contrast to those other courts have found adequate, such as "facts about what measures [a defendant] did or did not take to protect PII, what alleged inadequacies

in its systems it should have disclosed, [and] what 'standard and reasonably available steps' existed that [it] did not take." *Springmeyer*, 2021 WL 809894, at *3. For instance, in *Portier v. NEO Technology Solutions*, plaintiffs alleged that defendant failed to utilize encryption after it "was recommended by the Information Technology Department after two previous data breaches," and also failed "to adequately train its employees to guard against a phishing scam." No. 3:17-cv-30111, 2019 WL 7946103, at *13 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, No. 3:17-cv-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020). In *Toretto v. Donnelley Financial Solutions, Inc.*, plaintiff specifically alleged, based on defendant's own admission, that defendant had "deficient controls to prevent and monitor for unauthorized access of its email accounts and failed to encrypt the personal information stored on its servers." No. 1:20-cv-2667-GHW, 2022 WL 348412, at *12 (S.D.N.Y. Feb. 4, 2022) (internal quotation marks omitted); *see* Second Am. Class Action Compl. at 6-7 ¶ 18, No. 1:20-cv-2667 (S.D.N.Y. Aug. 5, 2020), ECF No. 57. In *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, plaintiffs alleged that defendants "failed to take even the basic precautionary measure of encrypting [their] data." No. 3:16-cv-00014-GPC-BLM, 2016

27

WL 6523428, at *1 (S.D. Cal. Nov. 3, 2016). And in *Sackin v. TransPerfect Global, Inc.*, plaintiff's specific factual allegations included that defendant failed to "erect[] a digital firewall, conduct[] data security training and adopt[] retention and destruction policies." 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017); *cf. Karter v. Epiq Sys., Inc.*, No. 20-cv-01385-CJC, 2021 WL 4353274, at *2-3 (C.D. Cal. July 16, 2021) (addressing only whether plaintiff had plausibly alleged that his personal information was "'exfiltrated' in a 'nonencrypted and nonredacted' form," not whether he plausibly alleged that defendant failed to implement reasonable security procedures).

By contrast, courts have joined the district court below in finding allegations insufficient where, for instance, a plaintiff did not allege what "protocols or actions [defendant] took when choosing appropriate security measures" and "[w]hat facts lead [plaintiff] to believe [defendant] didn't comply with industry standards[.]" *Razuki v. Caliber Home Loans, Inc.*, No. 17-cv-1718-LAB-WVG, 2018 WL 6018361, at *1-2 (S.D. Cal. Nov. 15, 2018); *see, e.g.*, *Kuhns,* 868 F.3d at 717 ("The allegation that '[defendant] did not maintain sufficient security measures and procedures to prevent unauthorized access' does not assert more than the mere possibility of

misconduct[.]"); *Maag*, 2021 WL 5605278, at *2 (finding insufficient such conclusory allegations as "[plaintiff failed to] implement and maintain reasonable security procedures and practices").

To be clear, at this stage Plaintiffs need not allege hyper-technical information about "the [exact] defect" that purportedly allowed hackers to breach defendant's data. *Contra* Br. 21 (citing *Ward v. Argon Med. Devices, Inc.*, No. 3:17-cv-640, 2018 U.S. Dist. LEXIS 46801, at *13 (N.D.N.Y. Mar. 22, 2018), which concerns defective medical devices, not unreasonable cybersecurity measures). But Plaintiffs do need to allege some facts that make it plausible that Waste Management did not implement *reasonable* security measures to protect its PII, because "the law does not impose strict liability for harms arising out of the storage of personal information." A142; *see Kuhns*, 868 F.3d at 717 (rejecting "implied premise that because data was hacked [defendant's] protections must have been inadequate").

### B.   Plaintiffs Cannot Point To Any Specific Factual Allegations Showing That Waste Management's Security Measures Were Unreasonable Or Inadequate

Plaintiffs claim that the district court erred in concluding that they failed to allege two facts: (i) that Waste Management stored information

in an unencrypted format, and (ii) that Waste Management failed to delete old data. But the district court committed no error.

*First*, Plaintiffs claim that they have "affirmatively allege[d] that attackers were 'able to access [P]laintiffs' PII in an unencrypted form.'" Br. 17 (second alteration in original) (citing district court order, A142). In support, they cite the following allegation, found in a footnote to their complaint: "The information exposed in the Data Breach was unencrypted." *Id.* (quoting A32 ¶ 7 n.5).

But that allegation cannot bear the weight Plaintiffs place on it, as it says nothing about Waste Management's security measures. Indeed, the district court agreed that the complaint "suggests"—though it does "not affirmatively allege"—"that attackers may have been able to *access* the plaintiffs' PII in an unencrypted form." A142. (emphasis added). But as the district court went on to find—and as Plaintiffs do not dispute— "this allegation does not plead that employees' PII was *stored* unencrypted on Waste Management's servers." *Id.* (emphasis added). Plaintiffs appear to assume that if the data was exposed in unencrypted form, it must not have been encrypted in the first place. But that is an insupportable assumption, for hackers can, of course, bypass encryption.

30

*See, e.g.,* 17 U.S.C. § 1201(a)(3)(A) (criminalizing "decrypt[ing] an encrypted work" that is copyright protected); *United King Film Distrib. Ltd. v. Does 1-10*, No. 21-cv-11024-KPF-RWL, 2022 WL 2473430, at *1 (S.D.N.Y. July 6, 2022) (finding that consumers use defendants' services and hardware "to bypass the Plaintiffs' encryption to view Plaintiffs' content"); *Marchionda v. Embassy Suites Franchise, LLC*, No. 4:15-cv-00479-JEG-SBJ, 2018 WL 8458871, at *7 (S.D. Iowa Aug. 13, 2018) (recounting how defendant "became aware of an examination method that could bypass the encryption security" on plaintiff's phone).

As this Court has made clear, "factual content that is 'merely consistent with,' rather than suggestive of, a finding of liability will not support a reasonable inference" of liability. *New Jersey Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Indeed, if Plaintiffs' allegation regarding how information was "exposed" were sufficient to establish liability, companies would effectively become strictly liable for data breaches, even if a company went beyond industry standards in encrypting and storing information. *See* A142. That is not

the law, which instead asks whether a defendant has taken *reasonable* measures to secure such information. *See* pp. 26-29, *supra*.

In any event, Plaintiffs' "specific allegations" (Br. 18) are not specific at all. Elsewhere, Plaintiffs inconsistently argue that the data either was "unencrypted, *or* not properly and securely encrypted." A103-104 ¶ 329 (emphasis added); *see* A83 ¶ 243 (alleging failure to "properly encrypt," not that PII was stored in unencrypted form). This Court is under "no obligation to entertain" such "unsubstantiated and inconsistent allegations," *Gallop*, 642 F.3d at 368, which do not plausibly allege, based on "well-pleaded facts," that Waste Management failed to store data in an encrypted format. Plaintiffs do not allege anything regarding the method of encryption, let alone why it was "improper" or unreasonable in light of industry standards. *See, e.g.*, *Razuki*, 2018 WL 6018361, at *1-2 (asking "[w]hat facts lead [plaintiff] to believe [defendant] didn't comply with industry standards").

*Second*, Plaintiffs contend that they adequately alleged that Waste Management failed to delete old data. But the sole premise of that allegation is that two of the plaintiffs had not worked for Waste Management for a number of years. Br. 19 (citing A52 ¶ 72, A63 ¶ 133).

Plaintiffs' complaint, however, did not even state that; it merely stated the dates each named Plaintiff worked for Waste Management. *See* A52 ¶ 72 ("in or about 1998 through 1999"); A63 ¶ 133 ("from 1998 through 2005"). The district court was under no obligation to accept this generic background information—which appeared in similar form in introducing each of the ten named Plaintiffs, regardless of when they worked—as a specific allegation that Waste Management failed to employ reasonable security measures. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994) ("[A] complaint must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of what it is the plaintiff asserts[.]" (internal quotation marks omitted)).

That is particularly true because the mere fact that two Plaintiffs worked for Waste Management years before the data breach occurred does not, without more, plausibly allege that Waste Management failed to implement reasonable security measures. Plaintiffs allege it is not reasonable to "store [PII] longer than necessary," A81 ¶ 232, but they provide no insight into industry standards for information retention or how companies are expected to determine when certain employees'

33

information is no longer "necessary." Nor, as the district court held, did they ever even "allege that Waste Management failed to delete old data" in violation of industry standards. A142.

***

Because Plaintiffs failed to adequately allege that Waste Management did not take reasonable security measures, this Court should affirm the district court's dismissal of all of Plaintiffs' claims.

## III.  PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS

If the Court agrees that the district court did not abuse its discretion or otherwise err in failing to *sua sponte* grant leave to amend or holding Plaintiffs' allegations deficient, it may affirm without further review. But there are additional reasons to dismiss the unjust enrichment, implied contract, and negligence claims (brought by all plaintiffs), and the CCPA and California UCL claims (brought by the two California Plaintiffs, Marcaurel and Fierro). *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("[I]t is axiomatic that an appellate court may affirm the judgment of the district court on any ground fairly supported by the record.").

## A.     Plaintiffs Failed To Plead An Unjust Enrichment Claim

The district court dismissed the unjust enrichment claim for two additional reasons.  First, the claim was wholly duplicative of the other claims; and second, Plaintiffs failed to allege that Waste Management "benefitted at the plaintiffs' expense," as is required for an unjust enrichment claim.  A146.

Plaintiffs fail to address the district court's first holding in their appeal brief, and have waived any argument on that point.  *See Estle,* 23 F.4th at 215 n.3.  Although they briefly address the second holding in a footnote, Br. 17 n.5 (quoting A146), this Court "do[es] not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review," *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993).  Accordingly, Plaintiffs have waived any challenge to the dismissal of their unjust enrichment claim.

In any case, Plaintiffs' unjust enrichment claim is plainly duplicative of their other claims.  *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (providing that an unjust enrichment claim that merely "duplicates, or replaces, a conventional contract or tort claim" may not proceed).  Indeed, Plaintiffs never even alleged that they

lack an adequate remedy at law. *See Federal Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."); *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998) (same), *aff'd*, 199 F.3d 788 (5th Cir. 2000); *see also O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law").

In addition, although Plaintiffs allege that Waste Management received "the cost savings resulting from failing to reasonably expend[]" additional funds to protect Plaintiffs' PII, A93 ¶ 286, Plaintiffs never allege that they received less than the "value of the services" they rendered, and therefore fail to allege Waste Management was enriched at their expense. *See Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) ("Recovery on [an unjust enrichment] claim is limited to the reasonable value of the services rendered by the plaintiff." (internal quotation marks omitted)); *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) ("[Plaintiff] has alleged neither a benefit

conferred in exchange for protection of his PII, nor has he shown how [defendant's] retention of his subscription fee would be inequitable. He thus has not alleged a claim for unjust enrichment."). Even if Plaintiffs have not waived these contentions, the district court properly dismissed the unjust enrichment claim.

### B. Plaintiffs Failed To Plead An Implied Contract Claim

As the district court held, there is no distinction between an implied and express contract. A143. An implied contract thus requires satisfaction of the same elements as an express contract: offer, acceptance, consideration, mutual assent, and intent to be bound. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009); *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015). Plaintiffs fail to allege any facts indicating that Waste Management contractually agreed to safeguard Plaintiffs' PII.

Plaintiffs' allegation that Waste Management took Plaintiffs' information in exchange for prospective or actual employment, A87 ¶ 256, is insufficient, without more, to establish "a contractual promise" on Waste Management's part "to safeguard that information, especially from third party hackers." *Longenecker-Wells v. Benecard Servs. Inc.*,

658 F. App'x 659, 662 (3d Cir. 2016); *see, e.g.*, *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1382 (N.D. Ga. 2021) (The "fact that Plaintiffs had to supply their PII as a condition of employment," "[w]ithout more," "is insufficient to support Plaintiffs'" breach of contract claim.); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-md-2904, 2021 WL 5937742, at *19 (D.N.J. Dec. 16, 2021) (same); *Thymes v. Gillman Companies*, No. H-17-cv-2834, 2018 WL 1281852, at *2 (S.D. Tex. Mar. 9, 2018) (same).

Instead, courts have required more—such as "company-specific documents or policies"—to indicate a company's agreement to safeguard data. *Longenecker-Wells*, 658 F. App'x at 663. In *Sackin*, for instance, the court noted "privacy policies and [a] security practices manual" stating "that the company 'maintains robust procedures designed to carefully protect the PII with which it [is] entrusted.'" 278 F. Supp. 3d at 750 (second alteration in original).

Here, however, Plaintiffs point to no policy documents from which a court could infer Waste Management impliedly agreed to protect their data. While Plaintiffs briefly refer to Waste Management's Employee Handbook and Code of Conduct (primarily in connection with their

express contract claim, *see* A32-33 ⁋ 8, A84 ⁋ 246, A85 ⁋ 248), those documents *explicitly disclaim* any intent by Waste Management to create contractual obligations. *See* A118 (Waste Management's Employee Handbook "is neither to be construed as a contract nor as conferring any contractual or other rights"); WASTE MANAGEMENT, CODE OF CONDUCT at 42 (May 2022) ("None of the Company's personnel documents or benefit plans, *including this Code of Conduct*, constitutes, or is intended to constitute, an express or implied contract guaranteeing continued employment for any employee or creating any other contractual right." (emphasis added)).[6]

Such disclaimers are "fatal" to Plaintiffs' "implied contract claims" because they "plainly convey [Waste Management]'s intention that the provisions in the [Employee Handbook and Code of Conduct] are non-binding." *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 86 (2d Cir. 2001) (applying New York law); *see also McAllen Hosps., L.P. v. Lopez*,

---

[6]     sustainability.wm.com/downloads/WM_Code_of_Conduct.pdf. This Court may consider the Employee Handbook and Code of Conduct, which are "incorporated into the complaint by reference," in evaluating a motion to dismiss. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). Although Plaintiffs relied on the April 2021 version of the Code of Conduct, the May 2022 language is identical.

576 S.W.3d 389, 396 (Tex. 2019) (jury was barred "from giving contractual weight to [employee handbook] provisions" in light of handbook's "disclaimer of contractual intent").

Accordingly, this Court may affirm the dismissal of Plaintiffs' implied contract claim on the independent ground that Plaintiffs failed to plausibly allege Waste Management intended to enter any such agreement.

## C.  Plaintiffs Failed To Plead A Negligence Claim

Plaintiffs do not dispute on appeal that, to the extent there is a conflict between Texas and New York law, "the laws of Texas will apply" because "it is the site of [Waste Management's] headquarters" and "this litigation arises out of the plaintiffs' allegation that Waste Management failed in its obligation to protect its employees' PII." A134.  But Texas has never recognized a common-law duty to protect PII, as Waste Management argued (Mem. in Supp. of Mot. to Dismiss at 7-8, No. 1:21-cv-06199 (S.D.N.Y. Jan. 7, 2022), ECF No. 52), and Plaintiffs conceded (Mem. in Opp'n to Mot. to Dismiss at 8, No. 1:21-cv-06199 (S.D.N.Y. Jan. 28, 2022), ECF No. 55), below.  Plaintiffs' negligence claim thus fails straight out of the gate.

40

Indeed, Texas has "legislative requirements already in place" that provide for the protection of PII—and thus would have no need to recognize "the creation of a new legal duty beyond" those "legislative requirements." *Cooney v. Chicago Pub. Sch.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010); *see* Mem. in Supp. of Mot. to Dismiss at 8 (citing *Cooney*, 943 N.E.2d at 27-29). In particular, by statute, Texas requires businesses to "implement and maintain reasonable procedures *** to protect from unlawful use or disclosure any sensitive personal information collected or maintained by the business in the regular course of business." TEX. BUS. & COM. CODE ANN. § 521.052(a). Texas law does not, however, provide for a private cause of action to *enforce* that requirement. Instead, the only remedies available for the violation of that section are civil penalties and injunctive relief in an enforcement action brought by the Texas Attorney General. TEX. BUS. & COM. CODE ANn. § 521.151(a). *See Patton v. Experian Data Corp.*, No. 17-cv-1559-JVS, 2018 WL 6190349, at *9 (C.D. Cal. Jan. 23, 2018) (explaining that because Texas "provides a private right of action to enforce" a neighboring provision, "only the Attorney General may enforce" the law's two other provisions, including its requirement that businesses protect PII); *Brown v. De La Cruz*, 156

41

S.W.3d 560, 567 (Tex. 2004) (Under Texas law, "causes of action may be implied only when a legislative intent to do so appears in the statute as written.").

In other words, Texas has made a policy choice that a business's duty to protect PII, which is defined by statute, should be enforced by the Attorney General alone. The Texas courts would not permit the common law to expand what the Texas legislature limited. *See Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (A "new tort" should "never *** be used to evade legislatively-imposed limitations on statutory claims[.]"); *see also Cooney*, 943 N.E.2d at 28-29 (declining to find "new common law duty" to safeguard information where "legislature has specifically addressed the issue"). Because Texas law would not recognize a new common law duty to protect PII, Plaintiffs should not be allowed to circumvent Texas's clear choice via a common law negligence action.

### D. California Plaintiffs Failed To Plead A California UCL Claim

California Plaintiffs' UCL claim fails for the independent reason that their complaint does not allege that Plaintiffs lack an adequate legal remedy for any harm caused by the data breach. "Remedies under the

UCL are limited to restitution and injunctive relief," which "are not available unless the plaintiff lacks an adequate remedy at law." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1147 (C.D. Cal. 2021). Accordingly, Plaintiffs carried the burden of alleging, in their "operative complaint," that they "lack[] an adequate legal remedy." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also O'Shea v*, 414 U.S. at 502 (complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law").

Plaintiffs' amended complaint does not do so. Although the complaint requests "injunctive relief" for California Plaintiffs' UCL claim, A101 ⁋ 323, the "operative complaint" nowhere pleads that the extensive damages they seek are not an "adequate legal remedy," *Sonner*, 971 F.3d at 844. Plaintiffs cannot remedy this defect through their briefing. *See Gamma Traders*, 41 F.4th at 80 ("[T]he law is clear that a party may not amend pleadings through a brief." (internal quotation marks omitted)). Nor can Plaintiffs claim that the reasoning of *O'Shea* and *Sonner* does not apply in the case of the forward-looking injunction they request. Precisely such an injunction was at issue in *O'Shea*, and

43

although *Sonner* addressed a request for restitution, none of its "reasoning suggests that it is limited to claims for restitution for past harms and not to purported future or ongoing harms." *Clark v. American Honda Motor Co.*, No. 20-cv-3147, 2021 WL 1186338-AB, at *8 (C.D. Cal. Mar. 25, 2021). This pleading defect is thus fatal to Plaintiffs' UCL claim.

### E. California Plaintiffs Failed to Plead A CCPA Claim

As the district court correctly held, California Plaintiffs' CCPA claim also fails for an independent reason: Plaintiffs did not plausibly allege that Waste Management failed to cure any alleged CCPA violation within 30 days.

1. Per the CCPA's cure provision, "if within the 30 days the business actually cures the noticed violation *** no action for individual statutory damages or class-wide statutory damages may be *initiated* against the business." CAL. CIV. CODE § 1798.150(b) (emphasis added). The use of the term "initiated" makes clear that where a business has "cure[d] the noticed violation," an action for statutory damages cannot proceed. California courts have thus concluded that an analogous requirement in the California Consumer Legal Remedies Act (CLRA) "create[s] a requirement analogous to exhaustion of administrative

44

remedies." *Benson v. Southern Cal. Auto Sales, Inc.*, 192 Cal. Rptr. 3d 67, 77 (Cal. Ct. App. 2015); *see* CAL. CIV. CODE § 1782(b) ("[N]o action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice."). Hence, where a business has provided a correction, the business may seek dismissal of the claim on that basis. *See Benson*, 192 Cal. Rptr. 3d at 77; *see also Kagan v. Gibraltar Sav. & Loan Ass'n* 676 P.2d 1060, 1063 (Cal. 1984) (CLRA action for damages will not lie if prospective defendant corrects wrongs), *overruled on other grounds by Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295 (Cal. 2009).

In typical conclusory fashion, Plaintiffs state that "[o]n information and belief [Waste Management] did not cure the Data Breach within 30 days." A97-98 ¶ 307. But there is no dispute that Waste Management sent Marcaurel's counsel a letter on July 21, 2021, 30 days after Marcaurel's notice, and Fierro's counsel a letter on August 16, 2021, 28 days after Fierro's notice. *See* A120, A124. Each letter provided the "express written statement," required by the CCPA, and explained that

45

any alleged violations had been cured and no further violations would occur.  A120-A126.[7]

2.  As the district court recognized (A148), Plaintiffs' true argument is that Waste Management can *never* cure the alleged CCPA violation, on the ground that Waste Management cannot return Plaintiffs to the same position they occupied before their PII was allegedly "made available and accessed by unknown actors."  Br. 27.  Under Plaintiffs' theory, the CCPA's "cure" provision simply does not apply in the case of a classic digital data breach, which can never be wholly undone, and is instead limited to instances of "physical theft" and the rare hacker who "return[s] the information to the original source."  Br 27-28.  The plain text, legislative history, and statutory context of the CCPA's cure provision do not support such a crabbed reading.

---

[7] Although Plaintiffs contend that Waste Management made only "the vague claim that it has 'taken measures to provide that no further alleged CCPA violations shall occur," Br. 25 (quoting A122), that is belied by the lengthy and detailed letters they rely on.  *See* A120-126 (describing the "extensive lengths" Waste Management has gone "to ensure the security of the network and safety of both employee and former employee personal information," how it implemented [a]dditional security safeguards" and "remediation efforts *** tailored to those potentially affected persons," and how it deployed patches, password resets, firewall review, and data loss prevention to prevent future violations).

When courts interpret a statute, they "begin with the statutory text, exhausting all the textual and structural clues bearing on its meaning and construing each word in its context and in light of the terms surrounding it." *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021) (internal quotation marks and footnote omitted).

Although Plaintiffs wish to define "violation" as the unauthorized access of each individual's PII, that reading cannot be squared with the CCPA's plain text. Section 1798.150(b) of the CCPA states that a company should not be subject to litigation if it "cures the noticed violation." CAL. CIV. CODE § 1798.150(b). The preceding provision makes clear that the relevant "violation" is a company's failure to implement reasonable security procedures. *Id.* § 1798.150(a)(1) (describing "the business's *violation* of [its] duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information (emphasis added)); *see also* A148 (district court applying same analysis). As described, Waste Management cured that alleged violation, and Plaintiffs do not plausibly allege otherwise. Thus, while plaintiffs are free to bring "an action solely for actual pecuniary damages suffered as a result of the alleged violations

47

of" the CCPA, Cal. Civ. Code § 1798.150(b), their current action was properly dismissed.

Plaintiffs' interpretation of the cure provision would render the provision practically meaningless, because it would effectively never apply in the typical case of a third-party hacker exfiltrating digital data (as opposed to committing physical theft). *See* Br. 27 (admitting their interpretation would mean it would be "often *impossible* to cure a violation of the CCPA retroactively"). But such an explanation does not make sense in light of the CCPA's stated goals of protecting, among other things, PII from "unauthorized access and exfiltration," Cal. Civ. Code § 1798.150(a)(1), not physical thefts. Nor does it jibe with the legislative history, which makes clear that the CCPA was intended as a response to the risks involved in the large-scale collection of individuals' digital data, as in the case of the Equifax data breach or the Cambridge Analytica scandal. *See* CAL. S. JUDICIARY COMM., ANALYSIS OF SB 1121, 2017-2018 Sess., at 1 (Apr. 24, 2018) (describing "[t]he infamous breach at Equifax" in its opening paragraph); CAL. S. JUDICIARY COMM., ANALYSIS OF AB 375, 2017-2018 Sess., at 1 (June 26, 2018) (describing how "[t]he Cambridge Analytica scandal exposed the trove of data being collected by Facebook

\*\*\* and the potential for harm if that data is not properly protected" in its opening paragraph).

3.    Plaintiffs counter that Waste Management's interpretation renders superfluous the cure provision's caveat that it applies only "[i]n the event a cure is possible." CAL. CIV. CODE § 1798.150(b).  Plaintiffs are mistaken.    There may be many circumstances in which a "cure is possible"—but not "within \*\*\* 30 days," as the statute requires.  *Id.*  And there also will be instances where it will not be possible for a company to remedy subpar cybersecurity measures at all.  For example, the United States Cybersecurity & Infrastructure Security Agency (CISA) has explained that "most vulnerabilities identified by CISA are related to unsupported operating systems that cannot receive patched or upgraded (secure) software," "largely due to the prevalence of legacy systems across all industries and sectors, some of which perform mission critical functions" and cannot be replaced "due to the budgetary constraints." CISA, REMEDIATE VULNERABILITIES FOR INTERNET-ACCESSIBLE SYSTEMS, at 2;[8] *see also Simmons v. USAble Corp.*, No. 4:20-cv-00137-KGB, 2021

---

[8] https://www.cisa.gov/sites/default/files/publications/CISAInsights -Cyber-RemediateVulnerabilitiesforInternetAccessibleSystems_S50

WL 4505549, at *11 (E.D. Ark. Sept. 30, 2021) (describing situations where "a patch was not available or exposed other vulnerabilities" in software or a system, or the vulnerability simply "could not be remediated").

In all events, the goal of the "cure" provision is to encourage businesses to fix violations and ensure that "no further violations shall occur." CAL. CIV. CODE § 1798.150(b). Even if it will only rarely be the case that a cure is not "possible," Waste Management's reading would encourage salutary fixes of deficient security measures, while still permitting claims "for actual pecuniary damages suffered." *Id.* That result makes far more sense than Plaintiffs' interpretation, which, by making most cures "impossible," Br. 27 (emphasis omitted), would offer no additional incentive for defendants to promptly fix deficient data security measures.

## CONCLUSION

The district court's judgment should be affirmed.

---

8C.pdf (last visited Oct. 6, 2022). "A court may take routine judicial notice of documents retrieved from official government websites." *Village Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022) (internal quotation marks and alterations omitted).

Respectfully submitted,

_s/James E. Tysse_

Elizabeth Scott

James E. Tysse

Michelle A. Reed

Kristen E. Loveland

AKIN GUMP STRAUSS HAUER &

AKIN GUMP STRAUSS HAUER &

   FELD LLP

   FELD LLP

2300 North Field Street

2001 K Street, NW

Suite 1800

Washington, DC 20006

Dallas, TX 75201

(202) 887-4000

(214) 969-2800

jtysse@akingump.com

_Counsel for Defendant-Appellee_

October 7, 2022

## CERTIFICATE OF COMPLIANCE

The foregoing brief is in 14-point Century Schoolbook proportional font and contains 9,905 words as determined by Microsoft Word, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rule of Appellate Procedure, and thus complies with the typeface, typestyle, and type-volume requirements set forth in Rule 32(a)(5)-(7)(B) of the Federal Rules of Appellate Procedure.

*s/James E. Tysse*
James E. Tysse

October 7, 2022