# 22-641

IN THE

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

————

JANIE MARCAUREL, individually and on behalf of all others similarly situated,
SHELBY INGRAM, individually and on behalf of all others similarly situated, NOLAN
BRODIE, individually and on behalf of all others similarly situated, MARK
KRENZER, GABRIEL FIERRO, GERALD DAVIS, MARY J. FUSILIER, CLIFFORD HARRIS,
MIGUEL MONTELONGO, STEVEN DUDLEY,

*Plaintiffs – Appellants*,

ANDREW KANTACK,

*Plaintiff,*

—against—

USA WASTE-MANAGEMENT RESOURCES, LLC,

*Defendant – Appellee*,

WASTE MANAGEMENT, INC.,

*Defendant.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS – APPELLANTS

MATTHEW M. GUINEY
LILLIAN GRINNELL
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114

*Counsel for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................3

I.     The District Court Never Gave Plaintiffs a Meaningful Opportunity to Request Leave to Amend.............................................................................3

II.    Plaintiffs Have Alleged Sufficient Facts to State Claims that are Plausible.12

III.   Plaintiffs Have Sufficiently Alleged Their Claims ......................................16

     A.     Plaintiffs Have Adequately Alleged an Unjust Enrichment Claim ............................................................................................16

     B.     Plaintiffs Have Adequately Alleged Breach of Implied Contract ......18

     C.     Plaintiffs have Sufficiently Alleged a Claim for Negligence ............22

     D.     Plaintiffs Have Sufficiently Alleged a Violation of California's Unfair Competition Law ..................................................................23

     E.     Plaintiffs Have Properly Pled Claims Pursuant to the California Consumer Privacy Act ...............................................................24

        1.  Defendant Did Not Provide Sufficient Information to Determine Whether there was a Cure........................................................ 25

        2.  A Post-Hoc Cure of Defendant's Violations of the CCPA May Not Have Been Possible ........................................................ 27

CONCLUSION ....................................................................................................28

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
   No. CV 19-MD-2904, 2021 U.S. Dist. LEXIS 240360
   (D.N.J. Dec. 16, 2021) ........................................................................ 19

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) .......................................................... 12, 15

*Archey v. Osmose Utilities Servs., Inc.*,
   No. 20-CV-05247, 2022 U.S. Dist. LEXIS 148038
   (N.D. Ill. Aug. 18, 2022) .................................................................... 19

*Armstrong Moving & Storage, Inc. v. Am. Cas. Co.*,
   No. A-12-CA-609-SS, 2012 U.S. Dist. LEXIS 193537
   (W.D. Tex. Dec. 18, 2012) .................................................................. 23

*In re Arthur J. Gallagher Data Breach Litigation*,
   No. 22-cv-137, 2022 U.S. Dist. LEXIS 175415
   (N.D. Ill. Sept. 28, 2022) ............................................................... 25-26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 12

*Baron v. Port Auth. of N.Y. and N.J.*,
   271 F.3d 81 (2d Cir. 2001) ............................................................ 20, 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 12

*Benson v. Southern Cal. Auto Sales, Inc.*,
   239 Cal. App. 4th 1198 (2015) ........................................................... 27

*Brooks v. Thomson Reuters Corp.*,
   No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093
   (N.D. Cal. Aug. 16, 2021) ................................................................... 24

ii

*Castillo v. Seagate Tech., LLC*,
   No. 16-cv-01958, 2016 U.S. Dist. LEXIS 187428
   (N.D. Cal. Sept. 14, 2016) ....................................................................18

*Clark v. Am. Honda Motor Co.*,
   528 F. Supp. 3d 1108 (C.D. Cal. 2021) ...............................................24

*Cohen v. N.E. Radiology, P.C.*,
   No. 20 CV 1202 (VB), 2021 U.S. Dist. LEXIS 16497
   (S.D.N.Y. Jan. 28, 2021).......................................................................19

*Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*,
   239 F. Supp. 2d 316 (E.D.N.Y. 2003) ..................................................21

*Cresci v. Mohawk Valley Cmty. Coll.*,
   693 F. App'x 21 (2d Cir. 2017) ...........................................3, 5, 6, 10

*Enslin v. The Coca-Cola Co.*,
   136 F. Supp. 3d 654 (E.D. Pa. 2015) ...................................................18

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*,
   822 F.3d 620 (2d Cir. 2016)..................................................................22

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011)..................................................6, 8, 9, 10

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
   41 F.4th 71 (2d Cir. 2022) ...................................................6, 8, 9, 10

*In re GE/CBPS Data Breach Litig.*,
   No. 20 Civ. 2903 (KPF), 2021 U.S. Dist. LEXIS 146020
   (S.D.N.Y. Aug. 4, 2021) ...........................................................14, 18, 19

*Horoshko v. Citibank, N.A.*,
   373 F.3d 248 (2d Cir. 2004)..................................................6, 8, 9, 10

*Joshi v. Trustees of Columbia Univ.*,
   No. 17-CV-4112 (JGK), 2018 U.S. Dist. LEXIS 89280
   (S.D.N.Y. May 29, 2018)......................................................................20

*Karter v. Epiq Systems, Inc.*,
   No. SACV 20-01385-CJC (KESx), 2021 U.S. Dist. LEXIS 189258
   (C.D. Cal. July 16, 2021) ...................................................................................26

*K.M. v. Adams*,
   No. 20-4128, 2022 U.S. App. LEXIS 24555
   (2d Cir. Aug. 31, 2022) ......................................................................................22

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ..............................................................................16

*Longenecker-Wells v. Benecard Servs. Inc.*,
   658 F. App'x 659 (3d Cir. 2016) .........................................................................19

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)........................................................................*passim*

*Maag v. United States Bank*,
   No. 21-cv-00031-H-LL, 2021 U.S. Dist. LEXIS 233009
   (S.D. Cal. Apr. 8, 2021) ......................................................................................16

*Malin v. XL Cap., Ltd.*,
   312 F. App'x 400 (2d Cir. 2009) ..........................................................................5

*Mastercraft Decorators, Inc. v. Orlando*,
   356 F. Supp. 3d 259 (W.D.N.Y. 2018) ...............................................................21

*McAllen Hosps., L.P. v. Lopez*,
   576 S.W.3d 389 (Tex. 2019)................................................................................20

*McFarlane v. Altice USA, Inc.*,
   524 F. Supp. 3d 264 (S.D.N.Y. 2021) .................................................................13

*Meeg v. Heights Casino*,
   No. 17CV4059NGGCLP, 2020 U.S. Dist. LEXIS 56387
   (E.D.N.Y. Mar. 27, 2020) ...................................................................................21

*Mehta v. Robinhood Fin. LLC,*
   No. 21-CV-01013-SVK, 2021 U.S. Dist. LEXIS 253782
   (N.D. Cal. May 6, 2021) ......................................................................................25

*Membler.com LLC v. Barber*,
  12-CV-4941(JS)(GRB), 2013 U.S. Dist. LEXIS 135862
  (E.D.N.Y. Sept. 23, 2013)....................................................................17

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
  970 F.3d 133 (2d Cir. 2020)..............................................................11

*Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*,
  930 F.2d 240 (2d Cir. 1991)..............................................................10

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986)................................................................11

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
  709 F.3d 109 (2d Cir. 2013)..............................................................15

*Nunes v. Cable News Network, Inc.*,
  31 F.4th 135 (2d Cir. 2022) ......................................................6, 7, 8, 9

*Nuss v. Sabad*,
  No. 7:10-CV-0279 (LEK/TWD), 2016 U.S. Dist. LEXIS 98529
  (N.D.N.Y. July 28, 2016)...................................................................17

*Oliver Sch., Inc. v. Foley*,
  930 F.2d 248 (2d Cir. 1991).................................................................6

*Purvis v. Aveanna Healthcare, LLC*,
  563 F. Supp. 3d 1360 (N.D. Ga. 2021) ..............................................20

*Razuki v. Caliber Home Loans, Inc.*,
  No. 17cv1718-LAB (WVG), 2018 U.S. Dist. LEXIS 196070
  (S.D. Cal. Nov. 14, 2018) ..................................................................15

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008)..............................................................10

*Sackin v. TransPerfect Glob., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ..........................................18, 22

v

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................24

*Springmeyer v. Marriott Int'l, Inc.*,
   No. 20-cv-867-PWG, 2021 U.S. Dist. LEXIS 39891
   (D. Md. Mar. 3, 2021) ........................................................................16

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ............................................................15

*In re Tamoxifen Citrate Antitrust Litig.*,
   466 F.3d 187 (2d Cir. 2006)..................................................................5

*Thymes v. Gillman Cos.*,
   No. 4:17-cv-02834, 2018 U.S. Dist. LEXIS 38817
   (S.D. Tex. Mar. 9, 2018) ....................................................................20

*United States v. Restrepo*,
   986 F.2d 1462 (2d Cir. 1993)..............................................................16

*Williams v. Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011)....................................................6, 7, 11

*Yamashita v. Scholastic Inc.*,
   936 F.3d 98 (2d Cir. 2019)..................................................................16

## **STATUTES & RULES**

Federal Rules of Civil Procedure
   Rule 8 .............................................................................................2, 12
   Rule 8(a)(2) ........................................................................................12
   Rule 12(b)(6) ......................................................................................12
   Rule 15 ...............................................................................................10
   Rule 59 ...............................................................................................10
   Rule 59(b) ..........................................................................................11
   Rule 59(e)...........................................................................................11
   Rule 60 ........................................................................................10, 11

vi

California Consumer Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1750, *et seq.*.................................................................26

California Consumer Privacy Act,
Cal. Civ. Code 1798.150 ("CCPA") ............................................*passim*

California Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").......................2, 24, 25

Texas Identity Theft Enforcement and Protection Act
Tex. Bus. & Comm. Code § 521.001, *et seq.* ("TITEPA") ....................................23

## INTRODUCTION

Plaintiffs and Appellants, present and former employees of or applicants for employment with Defendant USA Waste-Management Resources, LLC ("Defendant" or "Waste Management") are victims of a data breach that resulted in the theft of their and their dependents' sensitive personally identifiable information ("PII") from Waste Management, including Social Security numbers and driver's license numbers. The data breach was the result of Waste Management's failure to implement reasonable security measures, such as encrypting the PII or disposing of it when it was no longer needed.

This District Court improperly granted Defendant's motion to dismiss without affording Plaintiffs an opportunity to amend. It is undisputed that leave to amend should be freely given, but the District Court did not do that here. The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what way the complaint is deficient. The District Court did not give Plaintiffs this opportunity. Waste Management faults Plaintiffs for not requesting leave to amend in their opposition to the motion to dismiss, but the cases Defendant relies upon do not require this. Plaintiffs were under no obligation to seek leave to replead without yet knowing whether the District Court would grant the motion or on what ground.

1

Furthermore, there is no dispute that Rule 8 of the Federal Rules of Civil Procedure applies to Plaintiffs' allegations and that it does not require detailed factual allegations. Plaintiffs' allegations are not conclusory but allege that Defendant failed to property encrypt PII and that Defendant improperly retained PII for many years after some of the Plaintiffs had left Defendant's employment. Plaintiffs also allege that the Federal Trade Commission ("FTC") guidelines state that businesses should properly dispose of PII that is no longer needed and encrypt information stored on their networks. The District Court should have reasonably inferred from Plaintiffs' facts that Plaintiffs' PII was stored by Defendant in an unencrypted form or, if encrypted, not properly so, rather than inferring that it must have been properly and securely encrypted but that somehow it became unencrypted during the data breach. A district court cannot dismiss a complaint merely because it finds a different version of the facts more plausible.

Finally, for the reasons discussed below, Plaintiffs have sufficiently alleged their claims for unjust enrichment, breach of implied contract, negligence, violation of California's Unfair Competition Law, and violation of the California Consumer Privacy Act.

This Court should reverse the District Court's Order dismissing the Complaint.

## ARGUMENT

**I.      The District Court Never Gave Plaintiffs a Meaningful Opportunity to Request Leave to Amend**

In its Answering Brief, Waste Management agrees that leave to amend should be freely given and that the District Court did not "freely" grant it here. To avoid the obvious conclusion that this was an abuse of discretion, Waste Management tries to fault Plaintiffs for not requesting leave. But that argument only highlights the District Court's error. Here, the District Court dismissed the case without oral argument and then entering judgment on the same day as the dismissal order was filed. This deprived Plaintiffs of any meaningful opportunity to request leave since "[t]he proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient." *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017). "Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously." *Id.*

That is the crux of the problem. In dismissing the case on the very first motion to dismiss and simultaneously entering judgment, the District Court not only blindsided Plaintiffs, it also "committed a slight variant of the error [this Court] criticized and overturned in *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)." *Cresci*, 693 F. App'x at 25. In *Loreley*, the court held a pre-motion conference where the defendants explained the bases on which they

3

planned to move to dismiss the complaint. 797 F.3d at 169. The court then asked the plaintiffs if they wanted to amend in light of those arguments or proceed to briefing, noting that it considered the defendants' pre-motion letter and the points raised at conference to provide "fair warning" of the defendants' arguments and the potential need for amendment, and it "was not necessarily the court's practice" to give the plaintiffs an opportunity to amend later. *Id.* The plaintiffs chose to stand on their allegations, and the court dismissed the complaint without leave to amend. *Id.*

This Court held that denial of leave to amend was an abuse of discretion. The problem, this Court reasoned, was that the district court "presented Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." *Id.* at 190. This was improper because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Id.*

In the present case, the District Court did the same thing, albeit in a slightly more troublesome way. Rather than advising Plaintiffs that their only opportunity to amend would be in response to Defendant's motion to dismiss, the District Court simply dismissed the Complaint and entered judgment. The District Court thus presented Plaintiffs with the same Hobson's choice as in *Loreley*, it just declined to advise Plaintiffs that they were faced with that choice. Had the District Court advised

4

Plaintiffs that this was going to be their one and only shot, Plaintiffs at least could have made an informed decision.[1]

This Court reaffirmed the impropriety of this procedure in *Loreley* in *Cresci*, 693 F. App'x 21. Similar to here, in *Cresci*, "[s]imultaneously, in a single order, the court granted the defendant's motion to dismiss, identifying the flaws it found in Cresci's complaint, and denied Cresci leave to replead, faulting him for having failed to submit a proposed amended complaint in the time between the defendant's motion to dismiss and the court's ruling on it." *Id.* at 24-25. This Court held that was error because the plaintiff "learned what deficiencies the court had found upon receiving the District Court's order dismissing his complaint, but that same order prohibited [him] from amending his complaint." *Id.* at 25.

Waste Management responds by pointing out the plaintiffs in *Loreley*, *Cresci*, and other cases cited in Plaintiffs' Opening Brief asked for, in one fashion or another, leave to amend. It then posits that is the deciding factor here because Plaintiffs here

---

[1] Waste Management argues Plaintiffs could have included a request for leave to amend in the alternative in their Opposition to the Motion to Dismiss, but this Court has generally held that to be insufficient. *See Malin v. XL Cap., Ltd.*, 312 F. App'x 400, 403 (2d Cir. 2009); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the [district] court's discretion to deny leave to amend . . . when leave is requested informally in a brief filed in opposition to a motion to dismiss.").

did not. Waste Management also extracts quotes from a few cases from this Court noting that a district court generally cannot abuse its discretion in refusing to grant relief that was not requested. *See*, *e.g.*, *Nunes v. Cable News Network, Inc.*, 31 F.4th 135 (2d Cir. 2022); *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71 (2d Cir. 2022); *Gallop v. Cheney*, 642 F.3d 364, 367 (2d Cir. 2011); and *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004).

This is not the winning argument Waste Management portrays it to be. First, the holdings of the cases cited by Waste Management are not nearly as broad as Waste Management presents them. None of the cases holds that a plaintiff is categorically barred from asserting error in a denial of leave to amend where leave to amend was not formally requested. On the contrary, "[w]here the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991). And, as explained below, a similar argument to that made by Waste Management here was rejected by this Court in *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011).

Second, as explained in *Loreley* and *Cresci*, this is not a case where the plaintiffs realistically could have availed themselves of leave to amend and just did not ask for it. Rather, the District Court actively thwarted any effort to seek leave to amend by not holding a hearing, not advising Plaintiffs they would have no

6

opportunity to amend, and then entering judgment before Plaintiffs could even finish digesting the dismissal order. Obviously, if Plaintiffs could have anticipated the grounds on which the District Court would dismiss their Complaint, they would have amended rather than opposing the Motions to Dismiss.

*Williams*, 659 F.3d 208, is instructive. There, the District Court apparently believed, just as Waste Management argues here, "that the plaintiff was under obligation to seek leave to replead either immediately upon answering the motion to dismiss the complaint (without yet knowing whether the court will grant the motion, or, if so, on what ground), or immediately upon receipt of the court's ruling granting the motion and prior to the entry of judgment thereupon." *Id.* at 214. This Court held "there is no such rule." *Id.* Thus, to the extent Waste Management argues Plaintiffs were required to amend or ask for leave to amend before the ruling on the motion to dismiss, that is false. And Plaintiffs obviously had no chance to request leave to amend before judgment was entered.

Waste Management's chosen cases do not hold otherwise. The first, *Nunes*, 31 F.4th at 139, involved a defamation action by Devin Nunes against CNN. In that case, Nunes filed an *amended* complaint after a motion to dismiss and the district court granted the renewed motion to dismiss. On appeal, Nunes argued that the district court abused its discretion by not granting him leave to replead further. *Id*. at 147 n.7. This Court rejected that argument because "Nunes filed his amended complaint after

receiving a preview of CNN's motion to dismiss, failed to request leave to further amend below, and does not specify facts that could remedy the deficiencies in his pleadings." *Id. Nunes* is thus unlike our case because the plaintiff *did* amend his complaint and then failed to specify on appeal what further amendments he could make. *Id.*

*Gamma Traders – I LLC*, 41 F.4th 71 was a financial fraud case where, like *Nunes*, the plaintiff filed an amended complaint that was dismissed by the court. *Id.* at 76. The plaintiff did not even raise the issue of being allowed further leave to amend until *oral argument* on the ensuing appeal. *Id.* at 82. This Court easily rejected that request, noting that "Gamma's request for leave to amend came in rebuttal at oral argument on appeal – far too late for us to consider it." *Id.*

Then there are *Horoshko*, 373 F.3d 248 and *Gallop*, 642 F.3d 364, two outlier cases that have little applicability outside their unique facts. Both cases say that where the plaintiff's allegations are clearly ludicrous on their face, it is not an abuse of discretion to deny leave to amend in the first instance. *Horoshko* was a RICO suit brought by unhappy homeowners against their lender. 373 F.3d at 249. The District Court found the Horoshkos' substantive claims to be "frivolous or malicious," and their claim of diversity jurisdiction to be "frivolous" as well. *Id.* (citations omitted). The District Court thus dismissed the complaint and observed that "any appeal from this Order would not be taken in good faith." *Id.* The plaintiff ignored that

admonition and this Court upheld the District Court's dismissal without leave to amend. *Id.*

Similarly, in *Gallop*, the court dismissed with prejudice a complaint alleging a conspiracy to conceal the government's involvement in the September 11, 2001, attack and setting forth "a fantastical alternative history to the widely accepted account of the 'explosion' that injured [the plaintiff] and killed hundreds of other men and women inside the Pentagon." 642 F.3d at 367. The District Court concluded that Gallop's claims were "frivolous" and should be dismissed with prejudice, a finding this Court had no difficulty affirming. *Id.* at 368–69. This Court also issued an Order to Show Cause why the plaintiff and her counsel should not be forced to pay "double costs and damages in the amount of $15,000" as sanctions. *Id.* at 370.

None of the above cases hold—as Waste Management suggests—that a plaintiff denied the ability to request leave to amend after the District Court's first ruling on the plaintiff's allegations is uniformly barred from arguing the court abused its discretion. Rather, they hold a district court can, in some cases, be justified in dismissing the complaint without leave to amend, including where the plaintiff filed an amended complaint (*Nunes* and *Gamma Traders*),[2] where the plaintiff did not raise

---

[2] Defendant's argument that the Consolidated Complaint "was plainly an *amended* version of the four lengthy complaints comprising it" (Ans. Br. at 14, n.2 (italics in original)) is specious. The Consolidated Complaint was not filed to cure any deficiencies in the original complaints, which had never been confronted with a

the issue of amending the pleadings until the end of oral argument on appeal (*Gamma Traders*), or where the plaintiffs' allegations are patently frivolous and potentially sanctionable (*Horoshko* and *Gallop*).

Those circumstances are not present here, and none of the above cases considered the kind of situation analyzed in *Loreley* and *Cresci*. This is not a case where the District Court simply refused to grant leave to amend. Rather it dismissed the case in a way that deprived Plaintiffs of reasonably requesting leave to amend.

Waste Management counters that Plaintiffs could have filed a post-judgment motion under Fed. R. Civ. P. 59 or 60 seeking leave to amend. But that is not a satisfactory substitute because the standard under either rule is much more stringent than under Rule 15. "A party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "[I]t would be contradictory to entertain a motion to amend the complaint" without "a valid basis to vacate the previously entered judgment." *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to

---

motion to dismiss on the merits. Rather it was just a consolidation of four actions alleging identical misconduct on the part of Waste Management.

the philosophy favoring finality of judgments and the expeditious termination of litigation." *Williams,* 659 F.3d at 213 (internal quotations omitted).

A court may grant a Rule 59(e) motion "only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (citations and internal quotation marks omitted). And under Fed. R. Civ. P. 60, a judgment may be set aside only on a showing of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. The last provision "is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule." *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (internal citations omitted).

So while it may be true that as a matter of pure procedure Plaintiffs could have filed a post-judgment motion to vacate the judgment and requested leave to file an

11

amended complaint, that is not an adequate solution. The District Court abused its discretion in putting Plaintiffs in a position where that was the only possible remedy.

## II. Plaintiffs Have Alleged Sufficient Facts to State Claims that are Plausible

Waste Management does not dispute that Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), provides the appropriate pleading standard here and "does not require 'detailed factual allegations.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, Defendant argues that Plaintiffs' allegations are conclusory and that they do not allege specific facts about what security measures it did or did not take or how those measures compared to industry standards. To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombl*y, 550 U.S. at 570. But "[t]he plausibility standard is not akin to a 'probability requirement,'" although it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). *See also Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 184 (2d Cir. 2012) (Plausibility is "a standard lower than probability."). Plaintiffs have met this standard.

The Complaint alleges that "[t]he information exposed in the Data Breach" was either "unencrypted, or not properly and securely encrypted." Joint Appendix

("JA") 32 at ¶ 7, n.5; JA103-04 at ¶ 329. *See also* JA32 at ¶ 7 (alleging Defendant failed to provide timely notice to Plaintiffs "what types of information were unencrypted and in the possession of unknown and unauthorized third parties."); JA83 at ¶ 243 (alleging Defendant's "failure to properly encrypt its systems"). Furthermore, the Complaint alleges that Plaintiff Harris has not worked for Defendant in over 15 years, and Plaintiff Marcaurel has not worked for Defendant in more than 20 years; yet both received notifications from Defendant that their information was compromised in the data breach. JA52 at ¶¶ 72-73; JA63 at ¶¶ 133-34. The Complaint also notes that the FTC guidelines state: "businesses should properly dispose of personal information that is no longer needed" and "encrypt information stored on computer networks." JA50, ¶ 66. *See also* JA99, ¶ 314. The reasonable inference from these facts is that Defendant failed to implement reasonable security measures because it failed to encrypt, or did not encrypt properly, Plaintiffs' PII and failed to delete old and unnecessary data in violation of the FTC guidelines. *See, e.g., McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 281-82 (S.D.N.Y. 2021) (allegations that defendant failed "to perform its implied contractual duties, including inadequate email filtering software and cybersecurity training for employees who deal with sensitive data; a failure to encrypt the stolen document; and retention of personal identifying information pertaining to former employees who had left the company years earlier" sufficient to state a claim for breach of implied

13

contract); *In re GE/CBPS Data Breach Litig.*, No. 20 Civ. 2903 (KPF), 2021 U.S. Dist. LEXIS 146020, at *22 (S.D.N.Y. Aug. 4, 2021) (allegations that defendants breached their duty by "'failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the personal and financial information entrusted to [them]'. . . sufficient to sustain a negligence claim."); *id.* at *34 (plaintiffs sufficiently alleged breach of implied contract with allegations that defendant failed "to safeguard and protect [employees'] personal and financial information," "failed to maintain the confidentiality of PFI, ... failed to prevent the unauthorized disclosure of PFI outside of GE, and failed to provide security measures consistent with industry standards for the protection of PFI."). Plaintiffs' Complaint contains more than conclusory allegations and threadbare recitals of the elements of the causes of action; it contains specific facts demonstrating that Defendant failed to encrypt (or failed to do so properly) PII and to delete old and unnecessary data in violation of the FTC guidelines.

Defendant also makes the argument that because information ***can be*** decrypted, accepting as sufficient Plaintiffs' allegations that hackers were able to access Plaintiffs' PII in unencrypted form would impose strict liability on any company that experiences a data breach. Not so. Defendant is asking the Court to infer that Defendant stored Plaintiffs' PII in a properly encrypted form but that it was

14

somehow decrypted before being exposed in the data breach. This is improper. On a motion to dismiss, the District Court must accept all factual allegations as true and "'draw[] all reasonable inferences'" in Plaintiffs' favor, not Defendant's favor. *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (quoting *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011)). Therefore, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion. . . . A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C.*, 680 F.3d at 185. *See also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).") The District Court should have reasonably inferred from Plaintiffs' facts that Plaintiffs' PII was stored by Defendant in an unencrypted form or, if encrypted, not properly so, rather than inferring that it must have been properly and securely encrypted but that somehow it became unencrypted during the data breach.[3]

---

[3] The cases Defendant cites are distinguishable because the plaintiffs failed to allege *any* facts supporting their conclusory allegations that the defendants' security measures were unreasonable. *See Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 U.S. Dist. LEXIS 196070, at *4 (S.D. Cal. Nov. 14, 2018) (plaintiff merely claimed the defendant knew of "higher-quality security measures");

### III. Plaintiffs Have Sufficiently Alleged Their Claims

### A. Plaintiffs Have Adequately Alleged an Unjust Enrichment Claim

Citing only to a dated criminal case, *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993), Waste Management incorrectly states that Plaintiffs have waived their unjust enrichment claim asserting the only argument in Plaintiffs' brief relating to this claim appears in a footnote. Ans. Br. at 35. This is not true. Plaintiffs clearly have argued that the trial court applied the wrong pleading standard to Plaintiffs' unjust enrichment claim. Op. Br. at 16-17. While Plaintiffs used a footnote to further their arguments about the unjust enrichment claim, this claim has not been waived.

The District Court dismissed Plaintiffs' claim for unjust enrichment, believing that the claim is duplicative and also that Plaintiffs did not allege Waste Management

---

*Maag v. United States Bank*, No. 21-cv-00031-H-LL, 2021 U.S. Dist. LEXIS 233009, at *4 (S.D. Cal. Apr. 8, 2021) (plaintiff made only conclusory allegations that "his PII was compromised because Defendant did not 'implement and maintain reasonable security procedures and practices,' . . . 'failed to effectively monitor its systems for security vulnerabilities,' . . . and had 'lax security.'"); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017) (complaint did not "identify a single 'applicable law and regulation' that Scottrade allegedly breached regarding its data security practices," but simply alleged that "'Scottrade did not maintain sufficient security measures and procedures to prevent unauthorized access'"); *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 105 (2d Cir. 2019) (a copyright infringement case where plaintiff failed to pair any particular license limitation that was violated with any particular photograph); *Springmeyer v. Marriott Int'l, Inc.*, No. 20-cv-867-PWG, 2021 U.S. Dist. LEXIS 39891, at *7 (D. Md. Mar. 3, 2021) (plaintiffs failed "to allege any facts describing Marriott's cybersecurity or steps that it could have or should have taken to prevent this data breach"). Here, as discussed *supra*, Plaintiffs specifically identify what made Defendant's security measures unreasonable.

16

benefited at Plaintiffs' expense. JA146. Both findings are incorrect and should be reversed.

First, the District Court's determination that the unjust enrichment claim is duplicative was improper at the motion to dismiss stage, as Courts in this Circuit have declined to dismiss arguably duplicative claims at this early stage of litigation. "'At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims.'" *Membler.com LLC v. Barber*, 12-CV-4941(JS)(GR), 2013 U.S. Dist. LEXIS 135862, at *40 (E.D.N.Y. Sept. 23, 2013) quoting *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). While a plaintiff's unjust enrichment claim may ultimately seek duplicative relief, that is a matter to be determined at a later time. *Id.* For example, if the jury determines that the Plaintiffs' other causes of action are unsuccessful, Plaintiffs could still prove that Waste Management received a benefit that in equity and good conscience should be turned over to Plaintiffs. *See Nuss v. Sabad*, No.: 7:10-CV-0279(LEK/TWD), 2016 U.S. Dist. LEXIS 98529, at *33-34 (N.D.N.Y. July 28, 2016).

The District Court further erred in holding that "plaintiffs do not allege that Waste Management benefitted at the plaintiffs' expense," stating only that the hackers benefited. JA146. Plaintiffs do allege that Waste Management was enriched

by not expending necessary but costly data security expenses. JA93-94, ¶¶ 285-288.

As such, Plaintiffs adequately allege that Defendant benefited at Plaintiffs' expense.

### B. Plaintiffs Have Adequately Alleged Breach of Implied Contract

Waste Management argues Plaintiffs did not sufficiently allege the existence of implied contracts to safeguard employee data. Ans. Br. at 37-40. The District Court correctly rejected this argument finding that the handbook supports the existence of an implied contract. JA143. Moreover, an implied agreement is independently found anytime highly sensitive PII is transmitted as a condition of employment. *See Castillo v. Seagate Tech., LLC*, No. 16-cv-01958, U.S. Dist. LEXIS 187428, at *29 (N.D. Cal. Sept. 14, 2016) ("it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently."); *accord Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017); *In re GE/CBPS Data Breach Litig.*, 2021 U.S. Dist. LEXIS 146020, at *33.

Here, the District Court relied on *Sackin*, 278 F. Supp. 3d 739 and *In re GE/CBPS*, 2021 U.S. Dist. LEXIS 146020, both of which cite to *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654 (E.D. Pa. 2015). *See* JA143. *Enslin* found that an implied contract was properly alleged on the basis of statements in a privacy policy. *Enslin*, 136 F. Supp. 3d at 675. However, that affirmative representations may

18

support the existence of an implied contract does not mean conduct alone is insufficient. *See Cohen v. N.E. Radiology, P.C.*, No. 20 CV 1202 (VB), 2021 U.S. Dist. LEXIS 16497, at *22 (S.D.N.Y. Jan. 28, 2021) ("a contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct.") (internal quotations and citation omitted).

Waste Management cites the minority position expressed by the Third Circuit in *Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659, 663 (3d Cir. 2016), which dismissed the plaintiffs' implied contract claim for failure to point to "any company-specific documents or policies from which one could infer" an implied contract. But even if *Longenecker* controlled, Plaintiffs here have pointed to affirmative representations in the employee handbooks they received supporting the existence of an implied contract. JA33 ¶ 9, JA84 ¶ 246, JA85 ¶ 248; *see also Archey v. Osmose Utilities Servs., Inc.*, No. 20-CV-05247, 2022 U.S. Dist. LEXIS 148038, at *9-10 (N.D. Ill. Aug. 18, 2022) (distinguishing this case and *In re CE/GBPS* from *Longenecker*).

Defendant's reliance on factually distinguishable cases adopting the minority position in *Longenecker* is similarly misplaced. The court in *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 U.S. Dist. LEXIS 240360, at *71-73 (D.N.J. Dec. 16, 2021) dismissed an

19

implied contract claim because the plaintiffs had not alleged contractual obligations outside of those existing under federal law, which Waste Management does not argue here. And in *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1382 n.15 (N.D. Ga. 2021), the plaintiffs failed to point to any representations outside of those in a *patient facing* privacy policy.[4]

Waste Management also argues the Court should ignore the handbook entirely because of a purported disclaimer. Ans. Br. at 39-40 (citing *Baron v. Port Auth. of N.Y. and N.J.*, 271 F.3d 81, 85 (2d Cir. 2001)).[5] However, in *Baron* (which was decided at summary judgment), the relevant disclaimer was on the first page of the handbook. Courts have distinguished *Baron* from situations where disclaimers are placed inconspicuously into voluminous handbooks. *See Joshi v. Trustees of Columbia Univ.*, No. 17-CV-4112 (JGK), 2018 U.S. Dist. LEXIS 89290, at *20 (S.D.N.Y. May 29, 2018) ("It is … unclear whether the disclaimer language at issue in this case is sufficiently clear and unambiguous like that in *Baron*, where the

---

[4] *Thymes v. Gillman Cos.*, No. 4:17-cv-02834, 2018 U.S. Dist. LEXIS 38817 (S.D. Tex. Mar. 9, 2018), does not contain any real analysis, let alone mention the type of relationship between the plaintiff and defendant or the type of PII at issue. A review of the original and amended complaint reveals that *Thymes* was an individual action brought by the customer of a car dealership. *Id.*, ECF Nos. 1, 17. Neither document identifies the type of PII exposed. *See id.*

[5] Waste Management also cites *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389 (Tex. 2019), which was an appeal from a jury verdict—not a motion to dismiss.

disclaimer was displayed at the front of the policy ….").[6] The bottom right corner of the page containing the disclaimer at issue, JA118, states that it is page 117 of the handbook. Thus, it was not conspicuous like the disclaimer in *Baron*.

Moreover, Waste Management has not introduced copies of JA118 signed by Plaintiffs here. Nor is there evidence in the record for the Court to find that the handbook provided to each Plaintiff contained the purported disclaimer at issue. And its terms did not become effective until January 1, 2021. *See* JA116. Waste Management does not explain how these disclaimers can be applied to bar the claims of Plaintiffs who have not worked for Waste Management since before the terms took effect.

Finally, ambiguities in disclaimers are construed against the drafter. *Meeg v. Heights Casino*, No. 17-CV-4059(NGG/CLP), 2020 U.S. Dist. LEXIS 56387, at *12 (E.D.N.Y. Mar. 27, 2020); *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 239 F. Supp. 2d 316, 322 (E.D.N.Y. 2003). Whether the disclaimer applies to implied contracts is, at best, ambiguous; just because a statement cannot "create" contractual obligations on its own does not mean it cannot be used to support the

---

[6] The holding in *Baron* is also inapposite because it concerned the issue of at-will employment, which is already presumed under New York law. *See Baron*, 271 F.3d at 85 ("In New York, it has long been 'settled' that 'an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'") (citations omitted); *cf. Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 268–69 (W.D.N.Y. 2018) (disclaimer of employment relationship did not disclaim other aspects of handbook).

existence of an implied contract. *See, e.g.*, *Sackin*, 278 F. Supp. 3d at 750-51 (although privacy policy could not form an express contract, it "further supports" the existence of an implied contract).

### C.    Plaintiffs have Sufficiently Alleged a Claim for Negligence

Waste Management argues that Plaintiffs' negligence claim fails because "Texas has 'legislative requirements'" which provide the exclusive remedy for a business's failure to protect its employees' PII. Ans. Br. at 41. However, this argument "was neither passed upon by the district court below nor even *suggested* to that court" and is therefore deemed waived. *K.M. v. Adams*, No. 20-4128, 2022 U.S. App. LEXIS 24555, at *7 (2d Cir. Aug. 31, 2022) (emphasis in original).

Even if the argument had been properly preserved for review, it fails for multiple reasons. First, Waste Management quotes the District Court's observation that "if a conflict exists between the laws of New York and Texas, the laws of Texas will apply." Ans. Br. at 40 (citing JA134). Waste Management ignores the District Court's very next sentence, which clearly (and correctly) states, "No conflict exists between the law of New York and Texas applicable to the CAC's negligence claim." JA135. Because there is no conflict, New York law applies. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016).

But Plaintiffs' negligence claim would not be subject to dismissal even if Texas law did apply.[7] Waste Management argues that the Texas Identity Theft Enforcement and Protection Act ("TITEPA") provides the Texas Attorney General with the exclusive authority to redress a business's failure to protect PII and preempts all common law causes of action. Ans. Br. at 41-42. Texas courts disagree. *See Armstrong Moving & Storage, Inc. v. Am. Cas. Co.*, No. A-12-CA-609-SS, 2012 U.S. Dist. LEXIS 193537, at *10 (W.D. Tex. Dec. 18, 2012) ("any recovery by the state under TITEPA is not dispositive of, or even directly relevant to" a plaintiff's right to sue a business for negligence over the loss of PII because a "private cause of action would be additional to and independent from the state's action under TITEPA"). Waste Management cites no authority to the contrary.

### D. Plaintiffs Have Sufficiently Alleged a Violation of California's Unfair Competition Law

Defendant's argument that Plaintiffs' UCL claim fails because they do not allege that they lack an adequate legal remedy is belied by the fact that Plaintiffs specifically allege that "[i]n addition to a remedy for the economic harm, Plaintiffs and the Class members maintain an undeniable interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft."

---

[7] The District Court found Waste Management had a duty under Texas law to protect Plaintiffs' PII, but that Plaintiffs failed to plead a breach of that duty. JA139-40. Thus Waste Management is wrong to assert that Texas does not recognize a common law duty to protect PII. Ans. Br. at 40.

23

JA75, ¶ 206. Accordingly, Plaintiffs allege that they "lack an adequate legal remedy" with respect to the security of their PII in the future. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiffs thus seek "injunctive relief" in their UCL claim to address the future security of their PII. JA101, ¶ 323; JA105, ¶ d (ii)-(iii).

This case is distinguishable from *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021), which related to car defects, because plaintiffs there sought injunctive relief with respect to prospective future car purchases. By contrast, Plaintiffs' data remains in Waste Management's control and remains at risk. Under these circumstances, "courts have declined to apply *Sonner* to bar UCL claims for injunctive relief." *Brooks v. Thomson Reuters Corp*., No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093, at \*34 (N.D. Cal. Aug. 16, 2021).

### E.    Plaintiffs Have Properly Pled Claims Pursuant to the California Consumer Privacy Act

Defendant does not dispute that Plaintiffs properly pled their claims under the California Consumer Privacy Act (Cal. Civ. Code § 1798.150) ("CCPA") for injunctive relief, or address this issue at all. Instead, Defendant directs its opposition at the issue of whether it satisfied the CCPA's "cure" provision, a complex factual issue that was not appropriate for consideration at the pleadings stage.

24

Waste Management correctly recognizes that there are two separate issues about whether it satisfied the 30-day "cure" provision of the CCPA: (1) Did Waste Management take sufficient steps to cure its violation of its statutory duty to prevent "unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the [consumer's personal information]." (Cal. Civ. Code § 1798.150(a)); and (2) was a cure of Defendant's violation even possible?

### 1. Defendant Did Not Provide Sufficient Information to Determine Whether there was a Cure

Waste Management has not shown it cured its violations of the CCPA. First, Defendant has not addressed issues identified in the Complaint, such as its failures to "properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand [Defendant's] network's vulnerabilities; and implement policies to correct security problems"; "limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures." JA50 at ¶¶ 66-67. At the pleading stage, allegations that identify violations of the CCPA and assert that they have not been cured are sufficient to maintain a CCPA claim. *See, e.g., Mehta v. Robinhood Fin. LLC,* No. 21-CV-01013-SVK, 2021 U.S. Dist. LEXIS 253782, at *13-14 (N.D. Cal. May 6, 2021); *In re Arthur J. Gallagher*

*Data Breach Litigation*, No. 22-cv-137, 2022 U.S. Dist. LEXIS 175415, at *34 (N.D. Ill. Sept. 28, 2022).

Even if Defendant's factual claims of having cured security vulnerabilities were appropriate to consider on a motion to dismiss, Defendant did not provide any information about what security vulnerabilities actually caused the data breach, what steps would be assured to correct them, the steps Defendant took to cure those vulnerabilities, and whether those steps corrected the vulnerabilities. Defendant's vague statement that it "patched" the vulnerabilities without actually detailing what those patches entailed makes it impossible to gauge whether they were effective in curing the vulnerabilities. Instead, Defendant expects Plaintiffs and the Court to simply trust it that it (a) correctly identified all of the vulnerabilities that gave rise to the violation, (b) took any and all necessary steps to address those vulnerabilities, and (c) appropriately and correctly implemented those steps to industry standards. These questions of the effectiveness of Waste Management's actions represent detailed factual issues that require extensive discovery and substantial expert analysis and are consequently inappropriate at the pleading stage. *See, e.g., Karter v. Epiq Systems, Inc.*, No. SACV 20-01385-CJC (KESx), 2021 U.S. Dist. LEXIS 189258, at *6-7 (C.D. Cal. July 16, 2021). Defendant relies on cases interpreting a similar notice provision in the California Consumer Legal Remedies Act to claim its notice letter response stating that it cured the violations is justification to dismiss Plaintiffs'

26

Complaint despite the fact that such cases were not decided based solely on the word of the defendants. *See e.g. Benson v. Southern Cal. Auto Sales, Inc.,* 239 Cal. App. 4th 1198, 1204 (2015) (decided after discovery completed, with the record as to defendant's corrective action fully developed).

### 2. A Post-Hoc Cure of Defendant's Violations of the CCPA May Not Have Been Possible

The CCPA's statutory language makes clear that the presumption is that a cure of violations will not be possible. "[I]n the event a cure is possible" not only envisions the opposite—events where a cure is not possible—it leaves them as the default presumption with statutory damages unavailable only "in the event a cure is possible." If the statute envisioned most violations to be curable, it would have asserted that statutory damages were only available "in the event a cure is not possible."

By arguing that the "goal" of the cure provision is to encourage businesses to correct violations, Defendant ignores the obvious goal of the CCPA: to encourage businesses to avoid violations in the first place. The CCPA provides a time-limited cure provision to encourage businesses to fix those violations that can be cured for the consumers who have already been harmed by giving businesses a way of avoiding the statutory damages they are liable for because of their violations. If a business that had already allowed unauthorized access of PII could avoid liability merely by improving its security after the sensitive personal data has already been disclosed,

27

stolen, and/or exfiltrated, the CCPA's provision of statutory damages would provide no incentives for businesses to maintain costly security procedures and prevent unauthorized access and exfiltration from occurring.

Defendant claims that without letting businesses avoid liability through post-data breach security improvements, the CCPA would provide no incentive for defendants to fix deficient data security measures. Ans. Br. at 50. Not so. The CCPA provides businesses with the incentives to fix deficient security measures by making them liable for statutory damages whenever those deficient measures result in unauthorized exfiltration, theft, or disclosure of PII.

### CONCLUSION

For the foregoing reasons and the reasons given in Plaintiffs' Opening Brief, this Court should reverse the District Court's order dismissing this action without leave to amend and vacate the Judgment.

October 28, 2022        Respectfully submitted,

*/s/ Matthew M. Guiney*
MATTHEW M. GUINEY
LILLIAN GRINNELL
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600;
Fax: (212) 686-0114

*Counsel for Plaintiffs-Appellants*

28

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 37(a)(7)(B) and Local Rule 32.1(a)(4)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6991 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

Dated:  October 28, 2022                    /s/ *Matthew M. Guiney*
                                            MATTHEW M. GUINEY
                                            *Attorney for Plaintiffs-Appellants*

29